# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4826-16T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF H.E., SVP-518-08.

Argued March 22, 2018 — Decided June 7, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-518-08.

Joan Van Pelt, Designated Counsel, argued the cause for appellant H.E. (Joseph E. Krakora, Public Defender, attorney).

Cindi Collins, Assistant Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney).

PER CURIAM

H.E. appeals from the June 14, 2017 order of the Law Division, continuing his commitment to the Special Treatment Unit (STU), the secure facility designated for the custody, care and treatment of sexually violent predators pursuant to the Sexually Violent

Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

We need not recount H.E.'s prior criminal history or events since his original admission to the STU in 2009. They are recounted at length in our prior opinions, In re Civil Commitment of H.E., No. A-5298-08 (App. Div. Feb. 8, 2012), In re Civil Commitment of H.E., No. A-2826-13 (App. Div. Dec. 2, 2014), and In re Civil Commitment of H.E., No. A-2412-15 (App. Div. June 8, 2016). Suffice it to say that H.E. has an extensive criminal history consisting of non-sexual and sexual offenses. H.E.'s predicate convictions arose out of his 1999 guilty pleas to aggravated sexual assault upon a fifteen-year-old female acquaintance and aggravated criminal sexual contact upon a twenty-four-year-old stranger, for which he was sentenced to a twelve-year custodial term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. He was committed to the STU under the SVPA after serving his sentence, and his commitment has been continued following periodic review hearings.

The most recent review, which is the subject of this appeal, was conducted by Judge Philip M. Freedman on May 12 and 22, 2017. At the hearing, the State relied on the expert testimony of psychiatrist Roger Harris, M.D., and psychologist Nicole Paolillo, Psy. D., a member of the STU's Treatment Progress Review Committee

(TPRC), both of whom agreed on H.E.'s diagnosis and opined that his risk to sexually reoffend remained high. H.E. relied on the expert testimony of psychologist Gianni Pirelli, Ph. D., who agreed with the diagnosis of the State's experts but disagreed that H.E.'s risk to sexually reoffend was high. After interviewing H.E. and reviewing previous psychiatric evaluations, STU treatment records, and related documents, Harris and Pirelli prepared reports, which were admitted into evidence. Although Paolillo did not author the TPRC report, which was also admitted into evidence, she participated in the review, which included interviewing H.E. Various treatment notes and other records were also admitted into evidence.

Dr. Harris concluded that H.E., born February 1, 1975, met the criteria of a sexually violent predator and was "highly likely to sexually reoffend if placed in a less restrictive setting" because he has not mitigated his risk. Based on H.E.'s "pervasive pattern for the disregard and the violation of others," his failure "to conform to social norms" resulting in repeated arrests, his "impulsive[ness,]" "irritability[,]" "aggressiveness[,]" "reckless disregard for the safety of others[,]" "lack of remorse," "rationalizing" and "indifference to hurting others[,]" Dr. Harris diagnosed H.E. with antisocial personality disorder. Dr.

Harris also gave H.E. a score of five on the Static-99R,[1] indicating an above average risk to sexually reoffend. However, Dr. Harris testified that "[t]his does not include dynamic or psychological factors, and it doesn't include his sexualized violence, his history of impulsivity, his childhood behavioral problems and his antisocial attitudes and behaviors . . . ."

Dr. Harris also found evidence of "conduct disorder" with onset before age fifteen based partly on H.E.'s adjudication of delinquency for sexual assault in 1991 for "switching partners" without consent. H.E. reported that the probationary disposition he received for the offense did not deter him because "he was selling drugs, stealing cars, running the streets, not taking responsibility . . . ." According to Dr. Harris, "when you offend as a juvenile, and also offend as an adult, . . . you have a greater risk to sexually reoffend in the future . . . ." Dr. Harris also found significance in the fact that the predicate offenses were one month apart, that the second victim was a

---

[1] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014). Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

A-4826-16T5

stranger to H.E., and that there was an "escalation of violence overall . . . ." According to Dr. Harris, these factors increased H.E.'s risk of sexually reoffending and suggested that H.E. was "having greater difficulty inhibiting and controlling his sexually aggressive drive . . . ." In addition, because H.E. reported having "consensual sexual partners during this time, . . . clearly that was not sufficient for his sexual gratification."

Dr. Harris also diagnosed H.E. with alcohol and cannabis use disorders, based on his history of alcohol use beginning at age thirteen and marijuana use beginning at age sixteen. Dr. Harris explained that "the use of alcohol or cannabis can lower one's threshold to act impulsively, to lack control of one's aggression and sexual drive, so it puts one at greater risk to reoffend."

Dr. Harris found H.E.'s intelligence to be within the average or slightly lower than average range. However, Dr. Paolillo testified that although testing "placed him in a borderline range of intellectual functioning[,]" H.E. did not "present as a low functioning individual based on his cognitive skills[,]" and she saw no indication that he struggled with communicating or understanding.

Dr. Harris described H.E. as an "active participant" in treatment and Dr. Paolillo opined that H.E. "has received a mitigating therapeutic experience" just by virtue of his exposure

A-4826-16T5

to treatment. Since 2012, H.E. has been in Phase 3A of treatment, which Dr. Paolillo characterized as "the core phase of treatment[,]" but he had been rejected by the more advanced Therapeutic Community (T.C.) multiple times, reportedly because he denied culpability of his predicate offenses. According to Dr. Harris, while "denial of th[ese] kind[s] of aggressive sexual offenses does not appear to predict risk in the future[,]" by virtue of his denials, H.E. was "denying himself an opportunity to flesh out both his sexual offense cycle . . . to establish [relapse prevention] skills that address the nature of his aggression towards women, his violence, [and] his strong sexual drive."

In addition, Dr. Harris noted that H.E. was placed on MAP this past year for having a USB in his possession and for threatening a woman on the telephone, an accusation he denied. H.E. was also placed in the T.C.C.[2] when he was in a physical altercation with another resident and claimed he was assaulted by the resident although he had no "conflict with the individual." Dr. Harris pointed out that these incidents evidenced a pattern of H.E. "disowning" and not taking responsibility for his own aggression, and "trying to essentially sanitize the record."

---

[2] Dr. Harris and Dr. Paolillo explained that the T.C.C. is "basically an area for him to be isolated" for his protection.

A-4826-16T5

According to Dr. Harris, "[d]isowning the level of aggression that he engages in is at odds with . . . how one mitigates risk to sexually reoffend" and "has short circuited [H.E.'s] ability to move forward in treatment . . . ."

Although Dr. Pirelli agreed that H.E.'s diagnoses were part of his offending, and predisposed him to sexually reoffend at some point in time, he opined that they have been "mitigated significantly" and no longer impaired his volitional capacity to control himself. According to Dr. Pirelli, while antisocial personality disorder is not "curable[,]" H.E.'s "antisocial personality disorder related risks have decreased" for "a variety of reasons[,]" including H.E.'s age and environmental factors, such as H.E. having a fiancé and adult children. To support his opinion, Dr. Pirelli administered the Risk for Sexual Violence Protocol (RSVP), "a structured professional judgment" measure, which included "[twenty-two] empirically supported sexual violence risk factors across five domains[,]" consisting of sexual violence history, psychological adjustment, mental disorder, social adjustment, and manageability.[3]

---

[3] Dr. Harris disagreed with Dr. Pirelli's RSVP scoring of H.E. For example, according to Dr. Harris, Dr. Pirelli did not account for H.E.'s high score of twenty-six on the PCL-R or the psychopathy checklist revised, which provided a dimensional score that represented the extent to which an individual matched the

A-4826-16T5

Dr. Pirelli testified that although H.E. denied his predicate offenses, his assessment of H.E. encompassed both offenses, despite the fact that Dr. Pirelli questioned the reliability of the second victim's identification of H.E. as her assailant and Dr. Pirelli referred to the first conviction as the only "compelling adult offense." To further support his opinion, Dr. Pirelli pointed to H.E.'s most recent treatment plan, which reported either moderate or good progress in six out of seven areas. Dr. Pirelli concluded that H.E. was sufficiently in control of his behavior to be discharged with an appropriate structured discharge plan.

In an oral opinion rendered on June 14, 2017, Judge Freedman found by clear and convincing evidence that H.E. "has, in fact, committed sexually violent offenses which bring him within the purview of the statute[;]" that he "suffer[s] from a personality disorder, antisocial personality disorder, and an alcohol and drug use disorder," that in tandem affect him emotionally, cognitively,

---

prototypical psychopath. The higher the score, the closer the match, and presumably the greater the confidence that the individual is a psychopath. An individual receiving a score of thirty or above met the diagnostic criteria for psychopathy. Dr. Harris believed that while H.E.'s score did not meet the diagnostic criteria for a psychopath, it indicated psychopathic traits consistent with his antisocial personality disorder diagnosis. Dr. Harris also disagreed with Dr. Pirelli's premise that there was no diversity or escalation in H.E.'s sexual offending history.

and volitionally, and "clearly . . . predispose him to engage in acts of sexual violence[;]" and that if "released he would have serious difficulty controlling his sexually violent behavior and would be highly likely in the reasonably foreseeable future to engage in acts of sexual violence."

After articulating the applicable legal principles, recounting the testimony of all three experts, and detailing H.E.'s treatment record at the STU, the judge observed "[t]his case is primarily one of treatment progress." The judge noted the experts' agreement as to H.E.'s diagnosis, and pointed out that their "disagreement really rest[ed] on their perception of treatment progress." The judge acknowledged that H.E. has progressed but credited the opinions of the State's experts that "[H.E.] has not progressed far enough, and still remains highly likely [to sexually reoffend.]" The judge explicitly rejected Dr. Pirelli's assessment as to the extent of H.E.'s progression in treatment, finding that "Dr. Pirelli [was] totally minimizing, along with [H.E.], the nature of his offending in the . . . two predicate cases . . . ."

As a result, the judge did not "credit [Dr. Pirelli's] view that [H.E.] [was] ready to be discharged." Instead, the judge credited the testimony of the State's experts that "[H.E.'s] relapse prevention skills [were] not sufficient because there

[was] insufficient information being put into his cycle, which [was] the basis of his relapse prevention skills." The judge agreed that H.E. has participated satisfactorily, his attitude has changed, and he has improved the manner in which he conducts himself at the institution. However, according to the judge, H.E. has not dealt with the issues that are raised by his predicate offenses and he was

> going to have to come to grips with the dynamics of those two offenses which he totally, at this point, denies. He admits knowing one of the victims, but denies any sexual contact and totally denies the second offense. And Dr. Pirelli apparently agrees with him by looking at part of the evidence in the record.

Judge Freedman entered a memorializing order continuing H.E.'s commitment and this appeal followed.

On appeal,[4] H.E. argued Judge Freedman erred in concluding that the State met its burden of proof. H.E. asserted that the judge's reliance on his treatment progress was misplaced because, unlike paraphilia that does not spontaneously remit, his antisocial personality disorder diagnosis declines with age regardless of treatment effect and H.E. is now in his forties and

_____

[4] By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

his predicate offenses occurred two decades ago. We reject these arguments and affirm.

"'The scope of appellate review of a commitment determination is extremely narrow.'" R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (citing N.J.S.A. 30:4-27.28). "The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense . . . .'" Ibid. It also requires that the person "'suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.'" Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia). But, the diagnosis of each sexually violent predator susceptible

A-4826-16T5

to civil commitment need not include a diagnosis of "sexual compulsion." Id. at 129.

The same standard that supports the initial involuntary commitment of a sex offender under the Act applies to the annual review hearing. See In re Civil Commitment of E.D., 353 N.J. Super. 450, 452-53 (App. Div. 2002). In either case, "'the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend.'" W.Z., 173 N.J. at 133-34.

As the fact finder, "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[].'" R.F., 217 N.J. at 174 (second and third alterations in original) (quoting D.C., 146 N.J. at 61). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

We find no clear mistake on this record. We are satisfied that the record amply supports Judge Freedman's finding that H.E. suffers from antisocial personality disorder and alcohol and drug use disorders, a necessary predicate for continued commitment under the SVPA. See e.g., In re Civil Commitment of D.Y., 218

12                                                          A-4826-16T5

N.J. 359, 381 (2014). Based on credible expert testimony, the judge determined that H.E.'s disorders, past behavior and treatment progress demonstrated that he was highly likely to engage in acts of sexual violence unless confined. The judge's determination, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re J.P., 339 N.J. Super. 443, 459 (2001), was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4826-16T5