# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0759-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF E.D., SVP-075-00.

_____

Argued March 22, 2018 — Decided June 21, 2018

Before Judges Haas and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-075-00.

Patrick Madden, Assistant Deputy Public
Defender, argued the cause for appellant E.D.
(Joseph E. Krakora, Public Defender,
attorney).

Victoria R. Ply, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (Gurbir S. Grewal, Attorney General,
attorney).

PER CURIAM

E.D. appeals from the September 27, 2017 Law Division order
continuing his commitment to the Special Treatment Unit (STU), the
secure facility designated for the custody, care, and treatment
of sexually violent predators, pursuant to the Sexually Violent

Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

We need not recount E.D.'s prior criminal history or the events that followed his original admission to the STU in 2000. They are recounted at length in our Supreme Court's decision, In re Civil Commitment of E.D., 183 N.J. 536 (2005), as well as in our prior opinions, In re Civil Commitment of E.D., 353 N.J. Super. 450 (App. Div. 2002), In re Civil Commitment of E.D., No. A-3984-02 (App. Div. May 14, 2004), In re Civil Commitment of E.D., No. A-0685-05 (App. Div. Jan. 14, 2008), and In re Civil Commitment of E.D., No. A-5263-13 (App. Div. Oct. 28, 2016), certif. denied, 230 N.J. 487 (2017). Suffice it to say that E.D., born September 1957, has an extensive juvenile and adult criminal history, which began at age fourteen.

Initially, E.D.'s offenses were primarily non-sexual theft, assault, and drug-related charges. However, in the 1970's, his offenses became more violent and developed sexual overtones. Specifically, his 1977 conviction arose out of his assault of a woman whom police found bleeding and with the crotch area of her pants torn. His 1978 conviction for rape involved him breaking into the victim's apartment. His 1994 conviction for criminal sexual contact resulted from him kicking in the victim's front

door.  His 1997 conviction for assault arose out of him ordering the victim to remove her clothes at knifepoint.

He was committed to the STU under the SVPA in 2001, following his incarceration for the 1997 conviction.  In 2003, he was conditionally discharged but later returned to the STU due to a violation of the discharge conditions.  In 2010, he was conditionally discharged again, but he absconded in 2012, and returned to the STU on the violation in 2014.  At the September 27, 2017 civil commitment review hearing before Judge James F. Mulvihill that is the subject of this appeal, the State presented expert testimony from Dr. Marta Pek Scott and Dr. Paul Dudek to support E.D.'s continued commitment.  In opposition, E.D. testified on his own behalf and explained the circumstances that led to his conditional discharge violations.

Dr. Scott, a psychiatrist, conducted a forensic psychiatric evaluation of E.D and submitted a report that was admitted into evidence at the hearing.  After interviewing E.D. in August 2017 and reviewing his previous psychiatric evaluations, STU treatment records, prison and police records, she concluded that E.D. met the criteria of a sexually violent predator.  Dr. Scott diagnosed E.D. with antisocial personality disorder and polysubstance use disorder.  According to Dr. Scott, these disorders do not

spontaneously remit, and their emotional, cognitive, and volitional effects make E.D. predisposed to commit acts of sexual violence. Dr. Scott also diagnosed E.D. with "borderline intellectual functioning" but acknowledged that it did not appear "he would suffer adaptive limitations."

Because of insufficient evidence, Dr. Scott did not diagnose E.D. with a paraphilic disorder. She believed E.D. committed his offenses "in the context of his personality disorder . . . combined with . . . substance use" because E.D. told her "he was intoxicated during all the offenses." Although E.D. denied "having a deviant arousal" or "deviant fantasies," Dr. Scott opined that, given his diagnosis, he did not exhibit enough understanding of important sex offender concepts to mitigate his risk for sexual re-offense.

According to Dr. Scott, while E.D.'s most recent progress notes indicated "that he [had] significantly improved upon the quality of his treatment participation and motivation, and processed several issues . . . related to his dynamic factors[,] [o]n the other hand, . . . he still [had] negative core beliefs about women" and "continue[d] to believe that the conditions of his discharge" were unfair. E.D. also consistently denied that any of his sexual offenses were non-consensual.

A-0759-17T5

Dr. Scott testified E.D. "still [had] work to do . . . developing his sexual assault cycle and . . . appropriate relapse prevention plan." According to Dr. Scott, E.D. had "no relapse prevention plan . . . despite the number of years he [had] spent at the STU," and his argument that he did not commit "any sex crime[s] during the time he . . . spent in the community . . . [did] not constitute a relapse prevention plan by any means."

Dr. Scott stated that at age sixty, E.D.'s Static-99R[1] score was five, which indicated an above average risk for re-offending. In addition to the actuarial measure, Dr. Scott considered various dynamic risk factors "that are not represented in the Static-99R," such as "early onset of sexual offending, substance abuse history, antisocial personality structure, re-offending after previous consequences, poor cognitive problem solving skills, cognitive

---

[1] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citing Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003)). Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

A-0759-17T5

distortions, and . . . inability to comply with treatment and supervision."

Dr. Scott also considered various mitigating factors such as "advanced age, serious illness, and skills obtained in treatment." However, she determined that none of these factors "provide[d] sufficient risk mitigation" in E.D.'s case and opined that he was currently "highly likely" to re-offend if released into the community. Furthermore, E.D.'s inability to comply with the conditions of his discharge in the past "indicate[d] that he [was] not ready for community life yet," and was unlikely to abide by conditions if discharged a third time within the next twelve months.

Dr. Paul Dudek, a psychologist and member of the STU's Treatment Progress Review Committee (TPRC), conducted an annual review of E.D.'s progress by interviewing E.D. and analyzing the prior TPRC reports and prior treatment team reports. He also submitted a report that was admitted into evidence. Dr. Dudek concluded that E.D. "would be highly likely to re-offend sexually," and had not experienced sufficient treatment effect to mitigate that risk.

Dr. Dudek generally agreed with Dr. Scott's diagnosis but added a diagnosis of "other specified paraphilic disorder,

specifically non-consent, with antisocial personality disorder," polysubstance use disorder, and "borderline intellectual functioning." Dr. Dudek attributed his diagnosis to "a strong component of that drive to act out on the urges and the fantasies related to non-consent," despite E.D.'s denial of "any sort of urges or a pattern of arousal to the kind of offenses . . . he's been involved in." Dr. Dudek explained that deviant arousal is a significant risk factor that treatment can control but cannot eliminate.

According to Dr. Dudek, after E.D. returned to the STU, he began his treatment trajectory poorly by focusing on the conditions of his discharge, which he believed were unfair. However, "during the course of his treatment," he became "more oriented towards recognizing his . . . poor problem solving, and the impulsivity and decision making" that "led to his return to the STU." Nonetheless, while E.D. was "becoming more engaged in the treatment, his understanding of the actual sex offense related factors" as well as "his own relapse prevention planning" were "relatively poor" and "hampered by his denial of the offenses." Given E.D.'s current treatment trajectory, Dr. Dudek stated it was "unlikely that he would comply with any sort of conditions of discharge."

7

Dr. Dudek also gave E.D. a score of five on the Static-99R, but found several dynamic risk factors, including relationship instability, "poor cognitive problem solving," a "history of impulsivity," "hostility toward women," "general social rejection," noncompliance with supervision, and "deviant arousal patterns." Although treatment exposure and advanced age could be mitigating factors, Dr. Dudek concluded that, in E.D.'s case, treatment had "not been sufficient . . . to reduce [his] risk," and there was "no indication" that his advanced age has had a beneficial effect.

In an oral opinion rendered immediately after the hearing, Judge Mulvihill found "by clear and convincing evidence" that E.D. had "been convicted of a sexually violent offense"; "suffer[ed] from antisocial personality disorder and paraphilia otherwise specified which affect him emotionally, cognitively, [and] volitionally"; had "serious difficulty controlling his sexually violent behavior"; and was "highly likely to sexually re-offend" if released. The judge found both experts credible and made findings consistent with their testimony and reports. He agreed with their diagnosis of antisocial personality disorder and polysubstance dependence but disagreed with Dr. Scott's opinion

that there was "no paraphilia" and no "deviant arousal." In that regard, he credited Dr. Dudek's contrary opinion.

Judge Mulvihill also recounted E.D.'s "extensive" juvenile and criminal history but acknowledged that, while E.D.'s sexual offenses were "very serious," they were twenty-five years old. Further, the judge referenced E.D.'s extensive "substance abuse history," which began with alcohol at age fourteen and cocaine and marijuana at age seventeen. Additionally, Judge Mulvihill acknowledged that E.D. was making "some progress in treatment recently" but noted that he continued to deny the sexual offenses and that, given his two prior failed attempts, he could not demonstrate that he was "highly likely to adhere" to the conditions of a conditional discharge if released now. Judge Mulvihill entered the order continuing E.D.'s commitment, and this appeal followed.

On appeal, E.D. concedes he committed a "sexually violent offense" and is therefore subject to the SVPA, but argues Judge Mulvihill gave insufficient weight to the factors indicating he did not pose a risk and was not likely to reoffend sexually. In particular, E.D. pointed out that he did not sexually reoffend when he absconded from conditional discharge between 2010 and 2014. In addition, he notes he has made progress in treatment and

has a reduced Static 99-R score because of his advanced age.[2] We reject these arguments and affirm.

"The scope of appellate review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (citing N.J.S.A. 30:4-27.28). "The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense,'" which, in E.D.'s case, is undisputed. Ibid. It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

---

[2] By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

A-0759-17T5

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia)," but, "the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" Id. at 129.

The same standard "to support involuntary commitment of a sex offender under the Act . . . applies for [an individual] who has been given a conditional discharge and is alleged to have violated it." E.D., 183 N.J. at 551. In either case, "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." Ibid. (quoting W.Z., 173 N.J. at 133-34).

As the fact finder, a trial judge is "not required to accept all or any part of [an] expert opinion[]." R.F., 217 N.J. at 174 (alterations in original) (quoting D.C., 146 N.J. at 61). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

We find no clear mistake on this record. We are satisfied that the record amply supports Judge Mulvihill's finding that E.D. suffers from antisocial personality disorder and other specified paraphilic disorders, a necessary predicate for continued commitment under the SVPA. See, e.g., In re Civil Commitment of D.Y., 218 N.J. 359, 381 (2014). Based on credible expert testimony, the judge determined that E.D.'s disorders, polysubstance dependence, past behavior, and treatment progress demonstrated that he was highly likely to engage in acts of sexual violence unless confined. The judge's determination, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re Commitment of J.P., 339 N.J. Super. 443, 459 (2001), was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0759-17T5