**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0895-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF A.R., SVP-746-16.

_____

Argued March 22, 2018 — Decided July 10, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
746-16.

Patrick F. Madden, Assistant Deputy Public
Defender, argued the cause for appellant
A.R. (Joseph E. Krakora, Public Defender,
attorney).

Nicholas Logothetis, Deputy Attorney
General, argued the cause for respondent
State of New Jersey (Gurbir S. Grewal,
Attorney General, attorney).

PER CURIAM

A.R. appeals from the October 6, 2017 order of the Law

Division, continuing his commitment to the Special Treatment

Unit (STU), the secure facility designated for the custody, care

and treatment of sexually violent predators pursuant to the

Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

A.R., who is now forty-four years old, committed his first non-violent sexual offense in 1995 and was sentenced to three years of probation for sexually touching two women in a park. While on probation, he committed three additional non-violent sexual offenses against other female victims from 1996 to 1998, each resulting in additional sentences to probation. In 2003, A.R. raped a thirteen-year-old girl at knifepoint in her home while her father was at work. He later admitted that he knew the family and often saw the young victim when he used to work with her father.

In 2004, A.R. pled guilty to aggravated sexual assault with a weapon and was sentenced to a fifteen year prison term and community supervision for life (CSL), and required to comply with the provisions of "Megan's Law," N.J.S.A. 2C:7-1 to -23. A.R. initially was evaluated at the Adult Diagnostic and Treatment Center at Avenel (ADTC) but was found ineligible to serve his sentence at the facility. Later, A.R. was transferred to and received treatment at the ADTC from August 2011 until March 2015, where "[h]e attended groups and focused issues around family background and dysfunction and criminal attitudes." A.R. later withdrew from treatment for some time in

A-0895-17T5

2012, and upon his return to the facility, he was placed on Level 3 of the treatment. Prior to his release, the State applied for A.R. to be civilly committed under the SVPA and on October 4, 2016, the Law Division civilly committed him to the STU.

On October 6, 2017, Judge Vincent N. Falcetano, conducted A.R.'s first review hearing, which is the subject of this appeal. At the hearing, A.R. did not challenge the fact he committed the requisite sexually violent criminal offense or suffered from a mental abnormality or personality disorder which predisposes him to commit acts of sexual violence.[1] The focus of

---

[1] The Supreme Court has explained the proofs required at the initial hearing and subsequent reviews as follows:

> At the commitment hearing, the State must establish three elements: (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]" Although the first two elements derive directly from the statute, to comport with substantive due process concerns, this Court interpreted the third statutory element as requiring the State to show that a person is "highly likely," not just "likely," to sexually reoffend.

(continued)

the trial was the third required finding that A.R. is highly likely to reoffend.

At the hearing, the State relied on the unrefuted expert testimony of psychiatrist Roger Harris, M.D., who opined that A.R.'s risk to sexually reoffend remained high. Because A.R. elected not to participate in the evaluation, Harris was unable to interview A.R. However, the doctor prepared a report on September 11, 2017, based upon his review of clinical certificates, presentence reports, prior Treatment Progress Review Committee (TPRC) reports, STU treatment records, and related documents, which were admitted into evidence. The State also admitted into evidence without objection a report prepared by Debra Roquet, Psy. D., a member of the STU's TPRC, which largely supported Harris's findings and conclusions. Both Harris and Roquet addressed the likelihood of A.R. reoffending if he was no longer committed.

Harris's report highlighted A.R.'s prior sexual offenses and stated that several involved young girls and children, and were "frotteuristic or exhibitionistic in nature." He also reported that many years after the 2003 offense, A.R. admitted

(continued)
          [In re Civil Commitment of R.F., 217 N.J.
          152, 173 (2014) (citations omitted).]

to three separate doctors his attraction to the thirteen-year-old girl, and that he had a "tendency to seek out vulnerable persons," which "made him feel powerful."

Harris testified that A.R.'s sex offending history demonstrated that he is unable to control his sexual drive "in spite of his convictions and losing his liberty." He also noted that empirical data shows that those who violate parole, as A.R. had in the past, had an "increase[d] . . . risk to sexually reoffend in the future[,]" which further supported his conclusion that A.R. is at a higher risk of reoffending because he is unable to control his sexual impulses.

Harris also testified that A.R.'s progression of sexual acts and even his minor offenses "illustrate his cognitive distortions[.]" He stated that in 2015, A.R. told a physician that he sexually touched a woman because "he thought the woman was purposely making her breasts go [up] and down while walking in the park" in order to attract his attention. Harris testified that this "illustrates several layers of his inability to regulate himself, to overly interpret sexual issues," and that "he thinks things are directed at him." In addition, Harris explained that A.R. exhibits these same characteristics while incarcerated. For example, when he is challenged, "he gets very upset and becomes quite aggressive," and has reported that "he

feels that officers are targeting him and making sexual comments to him."

Harris stated further that another factor that supported his assessment of A.R. is that "he has conflict within his peer relationships[.]" Specifically, he stated that A.R. admitted to another physician that he smacked his girlfriend because "he felt she was harassing him." Harris also determined that even though A.R. had "consensual sexual relations" with his girlfriend and a wife in a previous marriage, he still needed to "sexually gratify himself . . . by engaging in . . . other illegal paraphilic acts."

With respect to his substance abuse history, Harris testified that A.R. "reported drug use as a way to avoid prison sentencing[,]" and was admitted to a drug program, but "left that program without consent[.]" The doctor commented that with A.R., "it's hard to know what's accurate and what is not accurate," and he could not determine whether A.R. had a drug problem or was being manipulative when seeking drug treatment. Similarly, Harris found that at times it appeared as though A.R. "malinger[ed] and feign[ed] psychiatric symptoms to once again attempt to decrease his responsibility [for] his behavior."

Harris reviewed A.R.'s treatment history and found that A.R. had not improved. He stated that prior to going to STU,

A.R. engaged in "sex offender treatment," where he had poor attendance and did not complete the program. Since his time at STU, Harris testified that A.R. "is difficult to engage[,]" and "is essentially just learning how to use treatment at this point[.]" Based upon his review, the doctor concluded that A.R. "has demonstrated very poor volitional control," and "cognitive distortion," which affects him emotionally.

Harris diagnosed A.R. with other specified paraphilic disorder, other personality disorder with antisocial traits, and borderline intellectual functioning. He explained that A.R. does not meet the "full criteria for antisocial personality disorder," but he has many traits including, "impulsivity, irritability, . . . aggressiveness, reckless disregard for the safety of others, [and] failure to conform to social norms." The doctor also diagnosed A.R. with cocaine and alcohol use disorders, although he reminded the court that A.R.'s reporting of his drug use history was unreliable. If accurate, Harris concluded that A.R.'s drug use "lowers his inhibitions," making it more difficult to control his sexual drive and increasing the chances that he will sexually act out.

Harris also reported that A.R. scored seven on the Static-99R,[2] indicating a "well above average" risk to sexually reoffend. However, he pointed out that "[t]his is not a full estimate for his risk to sexually offend" because it "does not address dynamic or psychological factors[,]" such as A.R.'s "multiple deviant arousals," failed supervision, poor cognitive problem solving and poor self-regulation. According to Harris, A.R. "remains a high risk to sexually reoffend and continues to meet the criteria for civil commitment under" the statute.

Roquet's report that was prepared after the TPRC examined A.R. on September 13, 2017, stated that A.R. was placed in Phase Two[3] when he was civilly committed to the STU. Based on A.R.'s treatment plan review from May 2017, the committee observed that the treatment team recommended that A.R. remain in the same phase. The TPRC concluded that A.R.'s progress in treatment has

---

[2] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." R.F., 217 N.J. at 164 n.9. Our Supreme Court "has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

[3] At the hearing, Harris defined Phase Two of treatment at STU as "the phase where men learn how to use treatment[,]" and "how to engage with each other and . . . how the therapeutic process works."

A-0895-17T5

not mitigated his risk for sexual recidivism, and that he is "highly likely to reoffend if not confined to the STU."

Roquet explained that there are several indicators that support the TPRC's finding, including A.R.'s Static-99 score, his high range dynamic risk factors, antisocial personality, psychopathic personality traits, and substance abuse. According to the report, A.R. should continue in Phase Two as he is "not yet being open in treatment" and is still in the early phase of treatment.

In an oral opinion placed on the record after the presentation of the evidence, Judge Falcetano found by clear and convincing evidence that A.R. was a sexually violent predator in need of continued civil commitment in a secure facility under the SVPA. The judge found Harris "qualified to render the opinions that he did, and [found] his testimony to be eminently credible." He observed that the STU report that was referenced in Harris's testimony, indicated that A.R. "is still adapting to the [facility] and to treatment, that he presents with a number of risk factors which need to be addressed over time[,]" and he "scores well above average in the risk to reoffend category" that requires him to continue in Phase Two of his current treatment.

The judge concluded by clear and convincing evidence that A.R. "suffers from a mental abnormality or personality disorder that . . . can only be mitigated by sex offender treatment," that the disorder "affects the person cognitively, emotionally or volitionally, which pred[isposes] the person to sexual violence[,]" and that A.R. is "presently highly likely to sexually reoffend, and in need of confinement at the STU." On the same day, Judge Falcetano entered a memorializing order continuing A.R.'s commitment and this appeal followed.

On appeal,[4] A.R. again does not challenge the finding that he committed a sexually violent offense, and that he was "properly diagnosed with a mental abnormality or personality disorder" that predisposes him to commit acts of sexual violence. Rather, he argues that Judge Falcetano erred in concluding that the State met its burden of proof that he is highly likely to reoffend because the judge "did not weigh the evidence properly[,]" and if he had, he "would have come up with a different conclusion[.]"

A.R. relies on In re Civil Commitment of V.A., 357 N.J. Super. 55 (App. Div. 2003), arguing that the judge should have

_____

[4]   By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

considered the goal of gradual de-escalation in restraints permitting a conditional release because he "no longer meets the criteria for civil commitment." He also asserts that the judge "inappropriately gave weight to other sex offenses" that only involved "frotteuristic" behavior "to make [his] determination that A.R. was highly likely to commit acts of sexual violence." Further, A.R. contends that given his time at ADTC and STU, "he has had many years of exposure to sex offender treatment," which is sufficient "to make a finding that [he] is no longer highly likely" to reoffend. We reject these arguments and affirm.

"The scope of appellate review of a commitment determination is extremely narrow. The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" R.F., 217 N.J. at 174 (citations omitted).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act. The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense.'" In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (citation omitted). It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person

likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia). But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" Id. at 129.

The same standard that supports the initial involuntary commitment of a sex offender under the SVPA applies to the annual review hearing. See In re Civil Commitment of E.D., 353 N.J. Super. 450, 452-53 (App. Div. 2002). As noted earlier, in either case, "'the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend.'" W.Z., 173 N.J. at 133-34.

As the fact finder, while "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[,]'" he or she may "place[] decisive weight on [the] expert." R.F., 217 N.J. at 156, 174 (second alteration in original) (citation omitted). Furthermore, "an appellate court should not modify a trial

court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting In re D.C., 146 N.J. 31, 58 (1996)).

We find no clear mistake on this record. We are satisfied that the record amply supports Judge Falcetano's decision, finding that A.R. suffers from paraphilia, among other mental abnormalities or personality disorders, a necessary predicate for continued commitment under the SVPA. See, e.g., In re Civil Commitment of D.Y., 218 N.J. 359, 381 (2014). Based on credible expert testimony, the judge determined that A.R.'s disorders, past behavior and treatment progress demonstrated that he was highly likely to engage in acts of sexual violence unless confined. The judge's determination, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re J.P., 339 N.J. Super. 443, 459 (App. Div. 2001), was proper. Contrary to A.R.'s assertions, this was not a case where the State was "unable to justify the continued confinement of the committee based on the progress the committee" has made so as to warrant "intermediate levels of restraint." V.A., 357 N.J. Super. at 64 (quoting E.D., 353 N.J. Super. at 456).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0895-17T5