801 A.2d 219

IN THE MATTER OF THE COMMITMENT OF R.S.

Argued January 28, 2002—Decided July 11, 2002.

*William F. Culleton,* Deputy Public Defender, for appellant R.S. (*Peter A. Garcia,* Acting Public Defender, attorney).

*Nancy Kaplen,* Assistant Attorney General, argued the cause for respondent State of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney; *Ms. Kaplen* and *Allison E. Accurso,* Assistant Attorney General, of counsel; *Mary Beth Wood,* Deputy Attorney General, on the brief).

PER CURIAM.

This case, like its companion, *IMO Commitment of W.Z.,* 173 *N.J.* 109, 801 *A.*2d 205 (2002), also decided today, involves application of the New Jersey Sexually Violent Predator Act (SVPA or Act), *N.J.S.A.* 30:4–27.24 to –27.38. In this case, R.S. challenges the State's use of actuarial risk assessment instruments by experts testifying in commitment proceedings under the Act. All arguments against the admissibility and use of such instruments were consolidated in this proceeding. We affirm the decision of

the Appellate Division upholding "the admissibility and use of actuarial [risk assessment] instruments at SVPA hearings as a factor in the overall prediction process" substantially for the reasons expressed in the thorough and persuasive opinion by Judge King. *IMO Commitment of R.S.*, 339 *N.J.Super.* 507, 534, 773 *A.*2d 72 (N.J.Super.A.D.2001). We add only the following.

■ We have no doubt that a testifying psychologist or psychiatrist may refer to actuarial risk assessment instruments used in the formation of the expert's opinion. As the Appellate Division noted in applying the standard set forth in *Frye v. United States*, 293 *F.* 1013, 1014 (D.C.Cir.1923), the use of actuarial instruments in the assessment process has gained general acceptance. *IMO Commitment of R.S.*, *supra*, 339 *N.J.Super.* at 538, 773 *A.*2d 72. We resort here to the *Frye* standard because of the significant liberty interest at stake. When seeking to satisfy that standard, however, a party need not show unanimous acceptance by the relevant community. *State v. Harvey*, 151 *N.J.* 117, 171, 699 *A.*2d 596 (1997). It is reliability that must be assured. *IMO Commitment of R.S.*, *supra*, 339 *N.J.Super.* at 539, 773 *A.*2d 72 (citing *State v. Cavallo*, 88 *N.J.* 508, 518, 443 *A.*2d 1020 (1982), and noting that context of the proceedings determines whether reasonable reliability exists).

Although there are critics who challenge the validity and predictability of actuarial instruments in sex offender assessments, the record expert testimony and scientific literature demonstrates that clinicians specializing in sex offender assessments generally support the use of actuarial instruments in the overall assessment process even though they do not support reliance on the actuarial instruments alone. *IMO Commitment of R.S.*, *supra*, 339 *N.J.Super.* at 538, 773 *A.*2d 72. As the Appellate Division summarized:

> The extensive expert testimony in this matter concerning validation studies, cross-validation studies, reliability studies, correlation coefficients, and clinically-derived factors attests to ... reliability in this context, where the actuarials are not used as the sole or free-standing determinants for civil commitment. They are not litmus tests. There is no requirement that the actuarial instruments be the best methods

which could ever be devised to determine risk of recidivism. What is required is that they produce results which are reasonably reliable for their intended purpose.

[*Id.* at 539, 773 *A.*2d 72 (citation omitted).]

■ We conclude, as did the courts below, that actuarial risk assessment instruments may be admissible in evidence in a civil commitment proceeding under the SVPA when such tools are used in the formation of the basis for a testifying expert's opinion concerning the future dangerousness of a sex offender. The testifying expert shall be permitted to refer to such instruments in explaining how he or she reached a conclusion concerning an individual's risk assessment. In so holding, we acknowledge that a testifying expert now may rely on actuarial as well as clinical information when formulating an opinion concerning future dangerousness. We anticipate that the trial court will regard the actuarial assessment information, as did Judge Freedman below, as simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA. *Id.* at 538–40, 773 *A.*2d 72.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, LaVECCHIA, and ZAZZALI—6.

*Opposed*—None.