RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4011-14T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF P.P.,
SVP-711-15.
_________________________

 Submitted April 5, 2017 – Decided July 18, 2017

 Before Judges Simonelli and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Docket No.
 SVP-711-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant P.P. (Nancy C. Ferro, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent State of New Jersey
 (Melissa H. Raksa, Assistant Attorney General,
 of counsel; Amy Beth Cohn, Deputy Attorney
 General, on the brief).

 Appellant P.P. filed a pro se supplemental
 brief.

PER CURIAM

 Appellant P.P appeals from the April 27, 2015 Law Division

judgment involuntarily committing him to the Special Treatment

Unit (STU) as a sexually violent predator pursuant to the Sexually
Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. We

affirm.

 An involuntary civil commitment can follow service of a

sentence, or other criminal disposition, when the offender

"suffers from a mental abnormality or personality disorder that

makes the person likely to engage in acts of sexual violence if

not confined in a secure facility for control, care and treatment."

N.J.S.A. 30:4-27.26; see also N.J.S.A. 30:4-27.25. To civilly

commit an individual, the State must prove by clear and convincing

evidence:

 (1) that the individual has been convicted of
 a sexually violent offense; (2) that he
 suffers from a mental abnormality or
 personality disorder; and (3) that as a result
 of his psychiatric abnormality or disorder,
 it is highly likely that the individual will
 not control his or her sexually violent
 behavior and will reoffend[.]

 [In re Civil Commitment of R.F., 217 N.J. 152,
 173 (2014) (citations omitted) (quoting In re
 Commitment of W.Z., 173 N.J. 109, 130
 (2002)).]

"Although the first two elements derive directly from the statute,

to comport with substantive due process concerns, [the] Court

interpreted the third statutory element as requiring the State to

show that a person is 'highly likely,' not just 'likely,' to

sexually reoffend." Ibid.

 2 A-4011-14T2
 In order to be considered a sexually violent predator, an

individual must have committed a sexually violent offense.

N.J.S.A. 30:4-27.26. Sexual assault is considered a sexually

violent offense. Ibid. In this case, in 1995, P.P., then age

twenty-one, pled guilty to endangering the welfare of a twelve-

year-old girl, E.G., with whom he had oral and vaginal intercourse

on three occasions. He was sentenced to 364 days in the county

jail, three years' probation, community supervision for life

(CSL), and ordered to undergo a psychological evaluation and follow

all recommendations.

 In January 2003, P.P. pled guilty to two counts of second-

degree sexual assault, N.J.S.A. 2C:14-2(c), of two fourteen-year-

old girls, A.S. and J.F., with whom he had sexual intercourse.

P.P. impregnated A.S. who bore a child. P.P. was sentenced to two

concurrent eight-year terms of imprisonment and CSL, and ordered

to comply with Megan's Law registration requirements.

 In 2007, while investigating a complaint that P.P. had

sexually assaulted a six-year-old girl, the investigator

discovered that P.P. was not living at the address he had

registered under Megan's Law. In January 2011, P.P. pled guilty

to the CSL violation, and was sentenced to eighteen months in

State prison.

 3 A-4011-14T2
 In May 2008, P.P. was arrested and charged with violating the

condition on special sentence that prohibited him from using the

internet to access social network websites. P.P. was found guilty

of the charge and sentenced to eighteen months in State prison.

 In May 2010, an investigator from the Gloucester County

Prosecutor's Office was monitoring the internet and found

suspicious file extensions on P.P.'s computer. An investigation

revealed files showing an adult male engaging in various sex acts

with a prepubescent female and a tutorial demonstrating how to use

various objects as sex toys with a preteen daughter and avoid

detection.

 In August 2010, P.P. pled guilty to second-degree endangering

the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a),1 and fourth-

1
 N.J.S.A. 2C:24-4(b)(5)(a) provides as follows:

 A person commits a crime of the second degree
 if, by any means, including but not limited
 to the Internet, he:

 (i) knowingly distributes an item depicting
 the sexual exploitation or abuse of a child;

 (ii) knowingly possesses an item depicting the
 sexual exploitation or abuse of a child with
 the intent to distribute that item; or

 (iii) knowingly stores or maintains an item
 depicting the sexual exploitation or abuse of
 a child using a file-sharing program which is
 designated as available for searching by or
 copying to one or more other computers.

 4 A-4011-14T2
degree violation of special sentence for failure to register and

notify the police of a change of address, N.J.S.A. 2C:43-6.4(d).

P.P. was sentenced to six years in State prison on the endangering

charge, and a concurrent eighteen months on the CSL violation.

P.P. also has an adult nonsexual criminal history that includes

convictions for simple assault, terroristic threats, and domestic

violence resulting in a final restraining order issued against

him.

 On January 9, 2015, the State filed a petition seeking P.P.'s

involuntary commitment under the SVPA. Judge James F. Mulvihill

conducted a commitment hearing, at which a psychiatric expert,

Roxanne Lewin, M.D., and a psychological expert, Nicole Paolillo,

Psy.D., testified for the State. Defendant testified on his own

behalf.

 Dr. Lewin attempted to interview P.P., but he declined to

attend. Based on her review of P.P.'s records, the doctor found

it significant that P.P. continued to sexually assault young girls

in 2002 even after a prior conviction for the same type of sexual

offense in 1995. She also found it a high risk behavior that P.P.

viewed child pornography while on CSL for these prior sex

 5 A-4011-14T2
convictions. She scored P.P. with a "6" on the STATIC-99R2

actuarial instrument, indicating he fell within the high risk

range to sexually recidivate in the community.

 Dr. Lewin diagnosed P.P. with Paraphilic Disorder, Not

Otherwise Specified, because of his arousal to prepubescent

females which resulted in multiple convictions for sexual assault.

She noted that even though P.P. was subject to CSL, he participated

in internet file sharing of child pornographic material, further

reinforcing his sexual deviance. She considered this offense when

determining P.P.'s ability to be monitored in the community. She

found it unlikely that P.P. thought all of his young victims were

of adult age.

 Dr. Lewin also diagnosed P.P. with a Personality Disorder,

NOS with Antisocial Traits, because of his demonstrations of

unlawful behavior and disregard for the rights of others beginning

at age nineteen. She found that P.P. was unable to control his

2
 The STATIC-99R is an actuarial test used to estimate the
probability of sexually violent recidivism in adult males
previously convicted of sexually violent offenses. See Andrew
Harris et al., Static-99 Coding Rules Revised-2003 5 (2003). Our
Supreme Court has explained that actuarial information, including
the Static-99, is "simply a factor to consider, weigh, or even
reject, when engaging in the necessary factfinding under the SVPA."
R.F., supra, 217 N.J. at 164 n.9 (quoting In re Commitment of
R.S., 173 N.J. 134, 137 (2002)).

 6 A-4011-14T2
impulses and that prior legal sanctions had no deterrent effect

on him. She also considered P.P.'s multiple arrests for nonsexual

criminal offenses.

 Dr. Lewin testified that while P.P. had participated in some

outpatient sex offender treatment sessions, they had no helpful

or significant effect. She could not point to any factors, such

as treatment progress, age, or current medical problems that

mitigated P.P.'s current high risk.

 Dr. Lewin concluded that P.P. suffers from a Paraphilia and

Personality Disorder that affect him emotionally, cognitively, or

volitionally so as to predispose him to commit acts of sexual

violence. She opined that P.P.'s disorders cause him to have

serious difficulty controlling his sexual offending behavior such

that he is highly likely to sexually reoffend if not confined to

the STU for treatment. She pointed to P.P.'s deviant sexual

arousal to young girls, his antisocial personality traits,

multiple victims, and prior failures under supervision as

aggravating factors leading her to conclude he is highly likely

to reoffend if not confined.

 Dr. Paolillo twice attempted to interview P.P., but he

declined. Based on her review of P.P.'s records, she testified

that during an evaluation with Jeffrey B. Allen, Ph.D. at the

Adult Diagnostic Treatment Center, P.P. acknowledged that he knew

 7 A-4011-14T2
E.G. was twelve years old when they had sexual intercourse. The

doctor found P.P.'s offending history significant because of the

consistency of the ages of his young victims and his commission

of the 2002 sexual offenses while on CSL. She testified: "It's

reflective of non-compliance with supervision, which is a robust

predictor of recidivism. . . . [P.P. is] a repeat offender of the

supervision that's been imposed upon him[,]" namely, failure to

register under Megan's Law, accrual of new charges, and possession

of photos of children engaged in sex acts.

 Dr. Paolillo found it improbable that P.P. could not know

many of the files found on his computer contained child pornography

because of the file names "pedo, preteen, baby, underage, child

lover, and 12-, 11-, 10-, 9-, 8-, 7-, 6- year old." She was

concerned that someone with P.P.'s history of sexual offenses

against children was reinforcing his deviant sexual arousal

through child pornography. She stated: "It's a precipitator to

[sexual] offending. It's an exceptionally high risk behavior."

She explained that by viewing explicit sexual images of children,

P.P. was reinforcing his sexually deviant arousal that, in turn,

becomes part of his sexual assault cycle.

 Dr. Paolillo testified that P.P. had not been exposed to sex

offender treatment beyond the few court-ordered sessions following

 8 A-4011-14T2
his first sexual offense conviction. She found it significant

that P.P. sexually reoffended after exposure to treatment.

 Dr. Paolillo diagnosed P.P. with Pedophilia, sexually

attracted to females, non-exclusive, because his criminal history

demonstrated his sexual arousal to female children between the

ages of twelve and fourteen. She testified that Pedophilia does

not spontaneously remit.

 Dr. Paolillo also diagnosed P.P. with Other Specified

Personality Disorder with Antisocial Features, which is

characterized by a pervasive, persistent, maladaptive pattern of

behaviors and inner experience. She explained that the antisocial

features of P.P.'s personality manifest in a pattern of disregard

for the wellbeing of others, failure to conform to social norms,

lack of genuine remorse, and impulsive and manipulative

proclivities in pursuing young impressionable children for sex.

 Dr. Paolillo also diagnosed P.P. with Alcohol Use Disorder,

mild, based on P.P.'s report that he was intoxicated when he

sexually assaulted E.G. The doctor explained that this disorder

does not by itself predispose P.P. toward sexual violence, but

alcohol "facilitates his expression of his sexual deviance, as

well as his antisocial tendencies. It's a disinhibiting factor.

It provides license to pursue behaviors that an individual would

typically stop themselves from pursuing."

 9 A-4011-14T2
 In forming her risk assessment, Dr. Paolillo considered

P.P.'s score of "6" on the STATIC-99R, his failure to comply with

supervisory conditions, and his substance abuse disorder that

serves as a disinhibiting influence on him and a component of his

sex assault cycle. She found no mitigating factors and that P.P.

had not benefitted from any treatment.

 Dr. Paolillo concluded that P.P.'s Pedophilia and Personality

Disorder affect his emotional, volitional, and cognitive

capacities, and predispose him to commit sexually violent acts.

She opined that P.P.'s Alcohol Use Disorder could act as a

disinhibitor and "facilitate[] his expression of his sexual

deviance as well as his antisocial tendencies." She found P.P.

highly likely to sexually reoffend if not confined.

 During his testimony, P.P. admitted he had sexual intercourse

with E.G. in 1995, and denied knowing whether she was over or

under the age of sixteen. He insisted he did not know his victims

were twelve or fourteen years old.

 In a comprehensive oral decision, Judge Mulvihill found by

clear and convincing evidence that: P.P. was convicted of sexually

violent offenses; continues to suffer from a mental abnormality

or personality disorders of paraphilia and pedophilia that do not

spontaneously remit; and was highly likely to engage in further

 10 A-4011-14T2
acts of sexual violence if not confined to a secure facility for

control, care, and treatment. The judge concluded that

 [C]learly [P.P.] is a danger to the community.

 It's not at all believable that he didn't
 know the ages of these children when he
 sexually abused them. And the State has
 proven by clear and convincing evidence that
 [P.P.] is a threat to the health and safety
 of others because of the high likelihood of
 his engaging in sexually violent acts. The
 State has proven by clear and convincing
 evidence that [P.P.] has serious difficulty
 controlling his sexually harmful behavior.
 It's highly likely he will not control his
 sexually violent behavior and will reoffend
 by clear and convincing evidence and has a
 present serious difficulty with control, and
 it's highly likely he will . . . reoffend by
 clear and convincing evidence.

 On appeal, P.P. contends that the State failed to prove by

clear and convincing evidence that he suffers from a present mental

abnormality and is a sexually violent predator with a high risk

of future recidivism.3 We disagree.

 Our review of a commitment determination is extremely narrow.

R.F., supra, 217 N.J. at 174. "The judges who hear SVPA cases

3
 We decline to address P.P.'s contention in his pro se
supplemental brief that classification of his strict liability
convictions as sexually violent offenses for the purpose of the
SVPA violates his due process rights. P.P. did not raise this
issue before Judge Mulvihill and it is not jurisdictional in nature
nor does it substantially implicate the public interest. Zaman
v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted).

 11 A-4011-14T2
generally are 'specialists' and 'their expertise in the subject'

is entitled to 'special deference.'" Ibid. "The final decision

whether a person previously convicted of a sexually violent offense

is highly likely to sexually reoffend lies with the courts, not

the expertise of psychiatrists and psychologists. Courts must

balance society's interest in protection from harmful conduct

against the individual's interest in personal liberty and

autonomy." Ibid. "A trial judge is 'not required to accept all

or any part of [an] expert opinion[ ].' The ultimate determination

is 'a legal one, not a medical one, even though it is guided by

medical expert testimony.'" Ibid. (quoting In re D.C., 146 N.J.

31, 59, 61 (1996)). We should not modify the judge's determination

"unless 'the record reveals a clear mistake.'" Id. at 175 (quoting

D.C., supra, 146 N.J. at 58). "So long as the trial court's

findings are supported by 'sufficient credible evidence present

in the record,' those findings should not be disturbed." Ibid.

(quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

 Governed by these standards, we discern no reason to disturb

Judge Mulvihill's decision. The documentary evidence and

testimony of Dr. Lewin and Dr. Paolillo, which Judge Mulvihill

found credible, amply supports the judge's findings that P.P.

presently suffers from both a mental abnormality and personality

disorders, and that as a result of his mental abnormality or

 12 A-4011-14T2
personality disorder, he is highly likely to engage in further

acts of sexual violence if not confined. Dr. Lewin diagnosed P.P.

with a paraphilia characterized by arousal to prepubescent

females, and Dr. Paolillo diagnosed him with Pedophilia

characterized by his sexual arousal to female children between the

ages of twelve and fourteen. Both doctors opined that these

conditions predispose P.P. to commit future acts of sexual violence

and do not spontaneously remit.

 Dr. Lewin and Dr. Paolillo also diagnosed P.P. with a

Personality Disorder, and opined this condition also predisposes

him to commit future sexually violent acts. Dr. Paolillo further

opined that P.P.'s risk to reoffend was heightened by his Alcohol

Use Disorder. Both doctors opined that P.P had not benefitted

from sex offender treatment.

 We are satisfied that the record amply supports Judge

Mulvihill's decision that P.P. is a sexually violent predator who

suffers from a mental abnormality and personality disorder that

make him highly likely to engage in acts of sexual violence if not

confined to a secure facility for control, care and treatment.

 Affirmed.

 13 A-4011-14T2