**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3707-16T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
A.E.F., SVP-306-03.

_____

Argued March 22, 2018 — Decided July 5, 2018

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
306-03.

Patrick F. Madden, Assistant Deputy Public
Defender, argued the cause for appellant
A.E.F. (Joseph E. Krakora, Public Defender,
attorney).

Francis A. Raso, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (Gurbir S. Grewal, Attorney General,
attorney).

PER CURIAM

A.E.F. appeals from the March 1, 2017 order of the Law

Division, continuing his commitment to the Special Treatment Unit

(STU), the secure facility designated for the custody, care and

treatment of sexually violent predators pursuant to the Sexually

Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  For the reasons that follow, we affirm.

We need not recount A.E.F.'s prior criminal history or the circumstances relating to his criminal convictions as they are not in dispute and are set forth at length in our prior opinions, In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 477-79 (App. Div. 2005), and In re Civil Commitment of A.E.F., No. A-5327-06 (App. Div. Jan. 2, 2008).  Suffice it to say that A.E.F. has an extensive criminal history consisting of non-sexual and sexual violent offenses.  In 2003, he was committed to the STU under the SVPA after serving his sentence, and his commitment has been continued following periodic review hearings.

The most recent review, which is the subject of this appeal, was conducted by Judge James F. Mulvihill on March 1, 2017.  At the hearing, the State relied on the unrefuted expert testimony of psychiatrist Dr. Roger Harris, who opined that A.E.F.'s risk to sexually reoffend remained high.  Harris' testimony was consistent with a report he prepared after reviewing previous psychiatric evaluations, STU treatment records, and related documents.  Harris did not rely on his own examination of A.E.F. because he refused to meet with the doctor.  Further, a Treatment Progress Review Committee (TPRC) report, authored by Dr. Paul Dudek on January 20, 2017, was admitted into evidence, without

objection.[1] Various treatment notes and other records were also admitted into evidence.

Harris concluded that A.E.F., born in 1951, met the criteria of a sexually violent predator and was "highly likely to sexually reoffend if placed in a less restrictive setting" because he has not mitigated his risk. Based on A.E.F.'s "pervasive pattern of disregard and the violation of others[,]" his "[f]ailure to conform to social norms" resulting in repeated arrests, his "[d]eceitfulness," his "impulsiv[eness,]" "irritability[,]" aggressiveness[,]" "reckless disregard for the safety of . . . others[,]" "lack of remorse[,]" and "indifferen[ce] to" hurting others, Harris diagnosed A.E.F. with antisocial personality disorder. He testified that A.E.F.'s score of five on the Static-99R,[2] indicating an above average risk to sexually reoffend, "was not a full estimate for his risk to sexually

---

[1] The parties stipulated to the report being admitted into evidence without the testimony of Dudek.

[2] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citation omitted). Our Supreme "Court has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

reoffend in that it does not address dynamic and psychological factors which have been shown to place individuals at risk, beyond what is measured by actuarial instruments."

Harris also diagnosed A.E.F. with other specified paraphilic disorder, coercion, because of his repeated behavior of "forc[ing] women to submit to his sexual demands against their will. He has engaged in this behavior in spite of arrests, convictions and ultimately loss of his liberty. He has repeatedly broken into homes and sexually assaulted women in these homes."

Further, Harris found evidence of A.E.F. having alcohol use disorder in a controlled environment, cannabis use disorder in a controlled environment, and opioid use disorder in a controlled environment. He testified that due to A.E.F.'s substance abuse problems, "whatever ability he has to resist his impulsivity around sexual aggression or just aggression, will further be eroded leaving him very vulnerable to act on either aggression or sexual aggression."

Harris described A.E.F. as being "very resistant to significant aspects of treatment." According to the doctor, A.E.F. has a history of "chronic back" problems that "necessitated hospitalization and surgery" and a result he "has refused to participate in [medical] treatment unless he is given opiates." He opined that although A.E.F. "has medical problems . . . [he]

4

do[es] not think [these] medical problems are an obstacle to treatment or mitigate [A.E.F.'s] risk to sexually reoffend." He testified "the way [A.E.F.] applies himself and the way he uses himself is the problem, not his medical conditions, which have interrupted his treatment and are a blip in his treatment[.]"

In addition, the TPRC that evaluated A.E.F. concluded in its report that he "is an individual who has yet to significantly lower his risk of recidivism to warrant recommendation of discharge and continues to be highly likely to engage in acts of sexual violence." Recounting his treatment progress, the TPRC observed that A.E.F. "had repeatedly touted his recovery from substance abuse but when confronted about his drug seeking behaviors for pain medications in 2015 he began a protracted and gradually escalating period of withdrawal from treatment that continues unabated today." He is "currently on Treatment Refusal Status" and was previously "on Treatment Probation Status after a clinically significant period of time in 2015 where he did not make any presentations . . ., was inconsistent in his attendance . . ., and was unwilling to address verbal warnings . . . that he could be placed on treatment refusal."

The diagnoses presented in the report were that of "Other Specified Paraphilic Disorder (non-consent)[;] Cannabis Use Disorder, In a Controlled Environment[;] Opioid Use Disorder, In

a Controlled Environment[;] Stimulant Use Disorder, In a Controlled Environment[;] Other Hallucinogen Use Disorder In a Controlled Environment[; and] Other Specified Personality Disorder, with Antisocial features, severe[.]" A.E.F.'s "Other Specified Paraphilic Disorder (non-consent) indicates that [he] experiences recurrent, intense sexual urges, fantasies, or behaviors that involve unusual objects, activities, or situations that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." "The specifier of non-consent is satisfied by [A.E.F.'s] history of self-reported . . . fantasies about raping others. Moreover, he has acted out on these fantasies by forcing sexual activity upon others in many of his crimes." His "substance abuse related disorders describe [A.E.F.'s] historical pattern of using marijuana, barbiturates, hallucinogens, stimulants, and opioids." Last, "[t]he diagnosis of Other Specified Personality Disorder refers to [A.E.F.'s] pattern of impulsivity, recklessness, and disregard for the rights and well-being of others."

The report noted that A.E.F. "was administered the Psychopathy Checklist-Revised, Second Edition (PCR-R)[, which] provides a dimensional score that represents the extent to which . . . a given individual is judged to match a 'prototypical psychopath' [and A.E.F.] received a score of [thirty-one.]" "An

individual who receives a score of [thirty] or above meets the diagnostic research criteria for psychopathy." According to the report, A.E.F. also received a score of five on the Static-99R, two points less than earlier tests, which was attributable to him turning sixty years old.

A.E.F. testified regarding the interruption in his treatment, explaining that his medical conditions have caused him to miss "[s]everal" treatment groups. He detailed the extent of his health problems, which included "extreme back pain" and stomach problems, both of which required surgery. Despite these conditions causing him to miss his treatment groups, A.E.F. testified that he "did the best [he] could."

In an oral opinion rendered on March 1, 2017, Judge Mulvihill articulated the applicable legal principles, recounted the testimony of Harris and A.E.F., and detailed A.E.F.'s treatment record at the STU. Although he found both witnesses credible, he determined "[t]hat there's clear and convincing evidence that [A.E.F.] has been convicted of very serious sexual violent offenses," which bring him within the purview the SVPA; that he "continues to suffer from a mental abnormality and personality disorder that does not spontaneously remit and affects him cognitively," and that if released, "he's highly likely to sexually reoffend." On the same date, Judge Mulvihill entered a

memorializing order continuing A.E.F.'s commitment, and this appeal followed.

On appeal,[3] A.E.F. argues that Judge Mulvihill erred in concluding that the State met its burden of proof because the judge "did not properly weigh the evidence[.]" Specifically, he asserts that the judge "did not properly consider both A.E.F.'s physical conditions as well as his advanced age in . . . determining whether or not he was highly likely to commit acts of sexual violence." He also argued that the judge "should not have found [Harris] credible because he did not give proper consideration" to these issues. We reject these arguments and affirm.

"The scope of appellate review of a commitment determination is extremely narrow. The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" R.F., 217 N.J. at 174 (citations omitted).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act. The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition

---

[3] By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

of a 'sexually violent offense' (which, in [A.E.F]'s case, is not disputed)." In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (citation omitted). It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia). But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" Id. at 129.

The same standard that supports the initial involuntary commitment of a sex offender under the Act applies to the annual review hearing. See In re Civil Commitment of E.D., 353 N.J. Super. 450, 452-53 (App. Div. 2002). In either case, "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 133-34.

As the fact finder, while "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[,]'" he or she may "place[] decisive weight on [the] expert." R.F., 217 N.J. at 156, 174 (second alteration in original) (citation omitted). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

We find no clear mistake on this record. We are satisfied that the record amply supports Judge Mulvihill's decision. Moreover, A.E.F. never disputed that he was convicted of committing the requisite criminal offenses or that he suffers from antisocial personality disorder and substance abuse disorders, a necessary predicate for continued commitment under the SVPA. See In re Civil Commitment of D.Y., 218 N.J. 359, 380 (2014). His only contentions were that his medical issues interfered with his ability to continue treatment and that his age and physical conditions made it less likely that he would reoffend. Based on credible expert testimony, the judge determined that, without treatment, even if attributable to his medical issues, A.E.F.'s disorders, past behavior and lack of treatment progress demonstrated that he was highly likely to sexually reoffend. The judge's determination, to which we owe the "utmost deference" and

may modify only where there is a clear abuse of discretion, <u>In re</u> <u>J.P.</u>, 339 N.J. Super. 443, 459 (2001), was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION