**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2097-16T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.W., SVP-748-16.

_____

Submitted May 15, 2018 — Decided July 20, 2018

Before Judges Fasciale and Sumners.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
748-16.

Joseph E. Krakora, Public Defender, attorney
for appellant M.W. (Alison Perrone, Designated
Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Melissa H. Raksa, Assistant
Attorney General, of counsel; Victoria R. Ply,
Deputy Attorney General, on the brief).

PER CURIAM

M.W., twenty-seven years old, appeals from a judgment that

committed him to the Special Treatment Unit (STU), a secure

facility for the treatment of persons in need of involuntary civil

commitment pursuant to the Sexually Violent Predator Act (SVPA),

N.J.S.A. 30:4-27.24 to -27.38. He contends the State failed to

prove by clear and convincing evidence that he suffers from a mental abnormality or personality disorder, which makes him highly likely to re-offend in the reasonably foreseeable future. Considering this contention in light of the record and applicable standards, we affirm.

An involuntary commitment can follow service of a sentence, or other criminal disposition, when the offender "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26; see also N.J.S.A. 30:4-27.25. To civilly commit an individual, the State must prove by clear and convincing evidence:

> (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]
>
> [In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (citations omitted).]

The first two elements derive directly from the statute. In order to "comport with substantive due process concerns, [the] Court interpreted the third statutory element as requiring the State to show that a person is 'highly likely,' not just 'likely,'

to sexually reoffend."  Ibid.  (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)).

To be considered a sexually violent predator, an individual must have committed a sexually violent offense.  N.J.S.A. 30:4-27.26.  Sexual assault is considered a sexually violent offense. Ibid.  With this legal framework in mind, we will now consider the facts that led to M.W.'s commitment under the SVPA.

M.W.'s first sexual offense arose when he was thirteen years old and charged with criminal sexual contact for grabbing the breast of a female peer.  He was found delinquent of the downgraded offense of harassment/sexual touching and was placed on one-year probation.  When he was twenty-one years old, he was adjudicated delinquent on two counts of aggravated sexual assault: (1) anally penetrating a six-year-old boy with his penis, and forcing the boy to perform fellatio on him; and (2) forcing a four-year-old girl to perform fellatio on him, and anally penetrating her with his penis and digitally.  A charge of aggravated sexual assault for rubbing his penis against the buttocks of a four-year-old boy was dismissed.[1]  He was given consecutive four-year sentences that

---

[1]  The dismissed charge and the adjudication were for acts that occurred when M.W. was fifteen years old and sixteen years old, respectively.

were suspended upon the condition of completing a residential placement program and six years of probation.

Due to his failure to report and an extreme lack of cooperation with treatment, M.W.'s probation was revoked and he was sent to New Jersey Training School for Boys (Training School) to serve his consecutive four-year sentences. While incarcerated and twenty-two years old at the time, he pled guilty to two counts of criminal sexual contact for exposing his penis to a fourteen-year-old boy and forcing the boy to touch his penis, and for also grabbing the boy's penis.[2] M.W. was sentenced to consecutive eighteen-month prison terms.

The State subsequently filed a petition for involuntary civil commitment under the SPVA. Judge Phillip M. Freedman conducted a two-day commitment hearing at which a psychiatric expert, Alberto Goldwaser, M.D., and a psychological expert, Zachary Yeoman, Psy.D., testified for the State, and a psychological expert, Timothy P. Foley, Ph.D., testified on behalf of M.W. All experts testified concerning their evaluation of M.W., and their review of his criminal history and other past evaluation assessments of M.W.

---

[2]  The separate incidents occurred on consecutive days.

According to Goldwaser, M.W.'s sex offense history with children — despite admitting to having frequent consensual sex with peer-aged partners — revealed impulsive offending behavior, which increases his risk for future sex offenses.[3] Goldwaser discovered M.W. had lived in a revolving door of foster homes during his youth and that his brother sexually abused him. He believed M.W.'s documented history of violence and arson evidenced his impulsivity and unwillingness to control his behavior. He noted M.W.'s juvenile treatment showed little progress in meeting progress goals. Goldwaser testified M.W. scored an eight on the STATIC-99R[4] actuarial instrument, but conceded even though others have considered his score a seven, both scores are within the high range to reoffend. Goldwaser found no evidence of attention deficit/hyperactivity disorder or bipolar disorder as did prior evaluators. Instead, based upon M.W.'s conduct and his admission to a prior evaluator that he was attracted to young boys, Goldwaser

---

[3] M.W. terminated his initial interview with Goldwaser but fully participated in a second interview.

[4] The STATIC-99R is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses. See Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003). Our Supreme Court has explained that actuarial information, including the Static-99, is "simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA." In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

rendered a diagnosis of pedophilic disorder, male and female nonexclusive, which caused him to feel that it was acceptable to act on impulses to engage in sexual behavior with children. He also diagnosed M.W. with antisocial personality disorder (ASPD), which increases his risk for sexual offenses because it decreases his ability to control his behavior. Noting M.W.'s history of violating probation conditions following his initial delinquency adjudication, coupled with his lack of appreciation of the benefits of treatment, Goldwaser opined that unless he is committed to the STU, he is highly likely to sexually reoffend.

Yeoman's testimony — although stating his diagnosis was reached independent of the other experts — mirrored Goldwaser's assessments. M.W. told Yeoman that he could not explain why he committed his sexual offenses. Yeoman noted that M.W.'s antisocial behavior was demonstrated by his inability to follow rules and committing acts of violence and arson. Yeoman indicated that M.W. had a non-compliant attitude towards treatment. Yeoman diagnosed M.W. with pedophilic disorder and ASPD, the combination of which predisposed him to sexually violent behavior and affected his ability to control the behavior. He also noted the discrepancy of M.W.'s STATIC-99R score of seven or eight, but found that both scores indicated a high risk to reoffend. Yeoman believed that

the pedophilic disorder was evident in M.W.'s youth and continued into his adulthood.

Foley disagreed with the State's experts. He opined that M.W. did not have ASPD — because he never lived in the community as an adult — nor pedophilic disorder — because it was only evident in his youth but not currently in is his adulthood. Since these disorders did not exist, Foley stated the STATIC-99R should not be considered in assessing M.W.'s likelihood to reoffend. He also saw no evidence of bipolar disorder. He claimed that the criminal sexual contact committed in the Training School was not substantial.

Judge Freedman found the testimony of the State's experts to be more credible than M.W.'s expert. He found the Training School offense, committed when M.W. was twenty-two years old, was a clear indication that his deviant sexual behavior was not restricted to his youth. The judge found the credible evidence demonstrated M.W. suffers from the mental abnormality of pedophilic disorder and the personality disorder of ASP; in turn affecting him emotionally, cognitively, and volitionally, and predisposing him to sexual violence, and making him highly likely to reoffend if not confined in a secure facility. He determined M.W.'s "history, his unfortunate upbringing . . . undoubtedly contributed substantially to his conduct and problems . . . [and based on]

his whole record, I don't think there's any question [he] is a dangerous person." Consequently, Judge Freedman found that M.W. was in need of civil commitment, and not a good candidate for a conditional discharge because the "likelihood of him complying with the conditions is very low."

In considering this appeal, our "review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (citation omitted). "The final decision whether a person previously convicted of a sexually violent offense is highly likely to sexually reoffend lies with the courts, not the expertise of psychiatrists and psychologists. Courts must balance society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy." Ibid. (citations omitted). "A trial judge is 'not required to accept all or any part of [an] expert opinion[].' The ultimate determination is 'a legal one, not a medical one, even though it is guided by medical expert testimony.'" Ibid. (alterations in original) (quoting D.C., 146 N.J. at 59, 61). Therefore, we should not modify the judge's determination "unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

A-2097-16T5

"So long as the trial [judge's] findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." Ibid. (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Governed by these standards, we discern no basis to disturb Judge Freedman's decision. The credible record — documentary evidence and testimony of Goldwaser and Yeoman — amply support a finding that M.W. is a sexually violent predator suffering from pedophilic disorder and ASPD, and he is highly likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment under the SVPA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2097-16T5