# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5355-16T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF D.S.,
SVP-749-16.

Submitted January 28, 2019 – Decided February 15, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-749-16.

Joseph E. Krakora, Public Defender, attorney for appellant D.S. (Nancy C. Hayes, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

D.S. appeals from a December 22, 2016 Law Division order, committing him to the Special Treatment Unit (STU), the secure facility designated for the custody, care and treatment of sexually violent predators pursuant to the

Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

We need not recount in substantial detail D.S's prior court history, which dates back to 1979. In sum, D.S. has an extensive juvenile delinquency and criminal history consisting of sexual and non-sexual offenses.

Pertinent to this appeal, in 1980, when he was eleven years old, D.S. pled guilty to criminally restraining an unidentified boy with a rope and forcing him to remove his clothing. D.S. was committed to a residential training center (RTC) for one year. Within four months, he violated probation and was resentenced to an indeterminate term not to exceed three years at another RTC.

In 1981, following a bench trial, D.S. was adjudicated delinquent for aggravated sexual assault by forcing a seven year old boy to perform fellatio on him while D.S. was on furlough from the RTC. D.S. was committed to the RTC for three years. He thereafter escaped from custody six times.

While an escapee from the RTC in 1982, D.S. was adjudicated delinquent for aggravated sexual assault by anally penetrating an eleven-year-old boy and stabbing him "repeatedly about the chest, arms and back with a knife." D.S. was committed to the Youth Reception and Correctional Center in Yardville, for an indeterminate term.

A-5355-16T5

D.S.'s predicate conviction arose from a June 1989 arrest, which he committed ten days after he was released from confinement. D.S., then twenty years old, lured a fourteen-year-old disabled boy into an abandoned building, and sexually assaulted him over a three-day period. D.S. choked the boy, forced him to stand on a bucket with a cord around his neck while threatening to remove the bucket and hang him, and lacerated his genitals with a piece of broken glass. Following a jury trial, D.S. was convicted of multiple offenses, including first-degree kidnapping, second-degree aggravated sexual assault, second-degree aggravated assault, and weapons offenses, for which he ultimately was sentenced to an aggregate forty-five-year prison term, with a twenty-year term of parole ineligibility.

While incarcerated in state prison, D.S. incurred fifty-nine disciplinary infractions, including refusal to obey, refusing to submit to a search, and assault, including an assault on a corrections officer in 2008. The most recent institutional infraction occurred in 2014.

On July 18, 2016, D.S. was temporarily committed to the STU under the SVPA after serving his sentence. The present appeal arises from D.S.'s commitment to the STU, following a hearing conducted by Judge James F. Mulvihill on December 22, 2016. At the hearing, the State relied on the expert

3

testimony of psychiatrist Emily Urbina, M.D., and STU psychologist Nicole Paolillo, Psy.D. D.S. did not testify or present any witnesses, but against the advice of counsel, D.S. cross-examined Dr. Urbina at the conclusion of his attorney's examination, and engaged in a brief colloquy with the judge.[1]

After reviewing previous psychiatric evaluations and court documents, Dr. Urbina and Dr. Paolillo prepared reports, which were admitted in evidence. Dr. Paolillo's report also included her interview of D.S., which he terminated before the interview was completed. Dr. Urbina twice attempted to interview D.S., but he declined to participate. Other documentary evidence admitted at the hearing included D.S.'s judgments of conviction, presentence reports, offense histories while incarcerated, and psychological and psychiatric reports.

D.S. was born in 1968 and was forty-eight years old at the time of the hearing. Dr. Urbina opined that D.S. "suffer[s] from a personality disorder and borderline intellectual functioning that affects his cognitive, volitional, and emotional capacity such that he is highly likely to sexually reoffend if not kept under the care, control and treatment of a secure facility such as the STU." Dr. Urbina's diagnosis also included "rule out" or "possible" sexual sadism disorder and other paraphilic disorder, coercive type.

---

[1]  D.S.'s statements were not made under oath.

In particular, Dr. Urbina based her antisocial personality disorder diagnosis on D.S.'s "long history of maladaptive pattern, disregarding the rights of others, low empathy, inability to conform his actions to the law, . . . because of his multiple arrests as well as multiple . . . violations while under supervision." She opined that those behaviors and his "extreme anger" predispose D.S. to sexually reoffend.

According to Dr. Urbina, D.S. scored a nine on the Static-99R,[2] placing him in the "high risk of reoffense" category. D.S.'s dynamic risk factors included his "history of general criminality," his "antisocial personality diagnosis[,]" his "toleran[ce] of the sexual offenses[,]" including his "deviant arousal" by committing sexual acts "as a juvenile and as an adult, and against two or more children." Dr. Urbina explained that although D.S.'s Static-99R overall score reflects a one-point reduction for his age, it is still within the "high" reoffense range.

---

[2] "The Static-99[R] is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses. See Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003). [We have] explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

 A-5355-16T5

Notably, Dr. Urbina testified that D.S. had not received sex offender treatment, and some of the reports she reviewed indicated he did not believe he needed treatment. Other reports referenced D.S.'s pragmatic statements that "if he w[ere] released he would go to sex offender treatment in order to obtain a job, as well as a residence." Further, while at the STU, D.S. has participated in group treatment but has been "dismissive of some of the treaters."

Dr. Paolillo clarified that D.S. had not received specific sex offender treatment at the STU, although he attended "the treatment orientation group" because he thought it was mandatory. Dr. Paolillo's diagnosis and impressions of D.S.'s likelihood to reoffend were similar to those of Dr. Urbina, concluding D.S. "present[ed] as a high risk and is highly likely to engage in future acts of deviant sexual behavior" if he were not committed.

Like Dr. Urbina, Dr. Paolillo diagnosed D.S. with antisocial personality disorder and intellectual disability. Dr. Paolillo also diagnosed D.S. as suffering from "other specified paraphilic disorder with non-consent and pedophilic traits" because he "appears predominantly oriented to young males." Further, she "provisionally diagnosed [D.S. with] sexual sadism" because D.S. "utilized a level of violence that far exceeded what was necessary to gain compliance." Dr.

A-5355-16T5

Paolillo noted she would need to further explore that condition through treatment before she could formally diagnose sexual sadism.

D.S. scored a nine on the Static-99R administered by Dr. Paolillo, placing him in the "high" risk to sexually reoffend. In accord with Dr. Urbina, Dr. Paolillo found several dynamic risk factors, including "relationship instability, . . . a predisposition to struggle with social rejection, lack of concern for others, poor problem solving, deviant sexual preferences, [and non-]cooperation with supervision. He [i]s impulsive, [and] struggles with negative emotionality."

In an oral opinion rendered on December 22, 2016, Judge Mulvihill determined both experts were "very credible witness[es]." After recounting the uncontroverted testimony of the experts, detailing D.S.'s juvenile, criminal and disciplinary history, and noting D.S.'s prior mental health evaluations, Judge Mulvihill concluded D.S. should be committed to the STU. Specifically, the judge found by

> clear and convincing evidence that [D.S.] has been convicted of sexually violent offenses, [and] . . . suffers from a mental abnormality or personality disorder that does not spontaneously remit, paraphilia, antisocial personality disorder that affect him emotionally, cognitively and volitionally, causing him to have serious difficulty controlling his sexually violent behavior, [and he is] highly likely to sexually reoffend . . . .

The judge entered a memorializing order committing D.S. to the STU, and this appeal followed.

On appeal, D.S. argues Judge Mulvihill erred in civilly committing him to the STU because the State failed to prove D.S. is a sexually violent predator, who is highly likely to commit acts of sexual violence in the future. In light of his age, D.S. contends his likelihood of reoffending has decreased "to the point where he should be conditionally discharged into a therapeutic setting more suited to his needs than is the STU." We reject these arguments and affirm.

"The scope of appellate review of a commitment determination is extremely narrow." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (quoting N.J.S.A. 30:4-27.28). "The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense' . . . ."

Ibid.  It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct."  Ibid.  "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia).  But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'"  Id. at 129.

To support the initial involuntary commitment of a sex offender under the Act, "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend."  Id. at 133-34.

We are satisfied from our review of the record that Judge Mulvihill's findings are supported by substantial credible evidence.  Based on credible expert testimony, the judge determined there existed clear and convincing evidence that D.S.'s disorders and past behavior demonstrated he was highly likely to engage in acts of sexual violence unless confined.  Given our limited

scope of review, the judge's decision to involuntarily commit D.S., to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re J.P., 339 N.J. Super. 443, 459 (App. Div. 2001), was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5355-16T5