# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5932-17T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
A.G., SVP-114-00.

Submitted September 10, 2019 – Decided September 25, 2019

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-114-00.

Joseph E. Krakora, Public Defender, attorney for appellant A.G. (Susan Remis Silver, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

A.G. is civilly committed to the Special Treatment Unit (STU), the secure custodial facility designated for the treatment of persons in need of commitment under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-

27.24 to -27.38. He appeals from the June 6, 2018 order of the Law Division continuing his commitment after an annual review required by N.J.S.A. 30:4-27.35, claiming the judge violated his right to a fair trial by "repeatedly interrupting" his expert and counsel. He also claims the judge erred by relying on the State's doctors' inadmissible net opinions of risk of re-offense, misstating the record underlying one of the expert's opinions, and finding A.G. has not engaged in drug or sex offender treatment and would not do so if discharged. We find no merit in those arguments and affirm.

A.G. is fifty-eight years old and has been civilly committed to the STU for nineteen years. His first conviction occurred in 1982, when he was twenty-one. A.G. sexually attacked a stranger on the street at 4:00 a.m. Police responded to the young woman's screams, and he was arrested at the scene. The victim claimed A.G. said "he would kill her," if she did not stop screaming. A.G. was convicted of first-degree aggravated sexual assault, as well as resisting arrest and first-degree aggravated assault on a police officer, and sentenced to an aggregate term of eight years in State prison.

Five years after his release, A.G. committed the predicate offense of second-degree sexual assault while the victim lay unconscious in her boyfriend's bed. When the victim's boyfriend awoke, A.G. threatened to kill

him if he called the police. A.G. was sentenced to ten years in prison for that offense, with a five-year parole disqualifier.

A.G. was committed to the STU in 2000 following a hearing at which the State proved by clear and convincing evidence that he had been convicted of a sexually violent offense, he suffered from a mental abnormality or personality disorder, and such abnormality or disorder made it "highly likely" A.G. would "'not control his . . . sexually violent behavior and will reoffend.'" In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)). We have affirmed A.G.'s continued commitment in five prior opinions encompassing seven prior appeals. In re Civil Commitment of A.Z.G., No. A-3048-14 (App. Div. Dec. 1, 2015); In re Civil Commitment of A.Z.G., No. A-0158-13 (App. Div. May 28, 2014); In re Civil Commitment of A.G., No. A-4356-05 (App. Div. Nov. 21, 2006); In re Civil Commitment of A.Z.G., No. A-3231-04 (App. Div. Oct. 17, 2005); and In re Civil Commitment of A.Z.G., Nos. A-1587-02, A-3386-02, A-3506-03 (App. Div. June 21, 2004).[1]

---

[1] Our 2005 opinion notes that residents of the STU without a middle name are assigned a middle initial of "X" or "Z," explaining the different captions involving this same individual. See A.Z.G., No. A-3231-04 (slip op. at 2 n.1).

At his most recent review hearing in 2018, the State presented the testimony of a psychiatrist, Dr. Roger Harris, as well as a psychologist and member of the STU's Treatment Progress Review Committee, Dr. Eugene Dunaev. Both doctors diagnosed A.G. with Other Specified Paraphilic Disorder, coercion or nonconsent; Antisocial Personality Disorder, with Dr. Dunaev adding Antisocial and Narcissistic Traits; and Alcohol, Cannabis or Stimulant Abuse Disorder in a controlled setting. Both doctors testified those disorders do not spontaneously remit and noted A.G. scored a four, "an above average risk to sexually offend" on the Static-99R.[2] Both testified A.G. was highly likely to reoffend.

Important to both the State's witnesses with regard to A.G.'s continuing need for commitment was his repetitive rule-breaking while at the STU and his failure to meaningfully engage in treatment. Dr. Dunaev testified A.G. was placed on MAP (modified activity placement) three times in the last two years

---

[2] "The Static-99R is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." R.F., 217 N.J. at 164 n.9 (citing Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003)). The Supreme Court has explained "that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

A-5932-17T5

alone for possession of contraband, and that one of his main treatment roadblocks is his "arrogance and grandiosity." He also testified A.G. is "rigid and sensitive," and does not take well to feedback in treatment.

Dr. Dunaev testified A.G. "wouldn't take responsibility for having contraband" and felt he didn't deserve being placed on MAP. Dr. Dunaev explained that when A.G. feels "wronged" in that way it "sets him back emotionally. Dysregulates. That's where his entitlement comes out. He becomes more impulsive," and "more verbally . . . oppositional in group." Asked what connection that had to A.G.'s likelihood to sexually reoffend, Dr. Dunaev explained

> those things . . . tap into his antisocial features, antisocial and psychopathic features that he presents, particularly the entitlement, his difficulty with taking responsibility, his history of irresponsibility, history of impulsivity, and also lifestyle instability. It highlights those areas of antisocial and psychopathic personality are still quite alive and quite — they're here, and they're . . . calling his name. So he still has plenty of criminogenic needs that he wants to fulfill.

Dr. Harris also testified A.G.'s "attitude and behaviors, his poor self-regulation, his poor judgment, his antisocial attitudes and behaviors increase his risk to sexually reoffend." Although A.G. acknowledged that both his victims were unconscious when he penetrated them, he maintained "that

A-5932-17T5

rendering the woman unconscious was not part of his arousal pattern." Dr. Harris testified the circumstances of those crimes "clearly indicate[] that coercion and an individual who is incapacitated is part of [A.G.'s] arousal pattern." Confronted on cross-examination with the report he offered in 2000 on behalf of A.G. at his initial commitment hearing that A.G. did not have a paraphilic disorder and "does not have deviant arousal," Dr. Harris explained that in coming to that opinion that A.G. did not "meet the criteria for a sexual disorder," he "relied heavily on [A.G.'s] self-report" that both crimes involved only consensual sex.

Dr. Barry Zakireh, a psychologist, testified on behalf of A.G. that he suffered from Other Specified Personality Disorder, with antisocial traits and multiple substance abuse disorders. Although Dr. Zakireh testified he considered the diagnosis of Other Specified Paraphilic Disorder with non-consensual features, he determined there was insufficient "evidence for [him] to distinguish [A.G.'s] acts of rape . . . from an individual that is primarily opportunistic and antisocial and commits rapes as opposed to one that is paraphilic and is specifically aroused almost in a preferential and persistent manner to non-consensual situations."

A-5932-17T5

Dr. Zakireh acknowledged that A.G.'s "response to treatment perhaps overall hasn't been stellar," but concluded "treatment has had at least a modest" positive effect. He also testified one does not "have to be perfect in treatment in order to lower their risk to sexually reoffend" and that "the risk could be lowered just by developmental factors, or changes that occur with or without their full intention." Dr. Zakireh concluded A.G. was not "highly likely to reoffend" and "would say that he's far, far below that threshold."

Based on the testimony of the State's expert witnesses as well as his review of the documentary evidence in the record, Judge Freedman found "the only thing that's changed here is that [A.G.] is a little older" than at his last review. The judge had no difficulty finding the State proved by clear and convincing evidence "that [A.G.] does, in fact, suffer from a mental abnormality in the form of a paraphilia and substance abuse disorders, and a personality disorder," and that those "conditions predispose him to engage in acts of sexual violence" such that "he would in fact have serious difficulty controlling his sexually violent behavior" if released and "would within the reasonably foreseeable future be . . . highly likely to engage in acts of sexual violence." The judge rejected A.G.'s expert's opinion to the contrary, finding it not supported by the evidence in the record.

A-5932-17T5

Judge Freedman noted A.G. had done "almost nothing to mitigate his risk" with regard to either drug treatment or efforts "to understand his sex offending," and found his age, standing alone, had not "reduced his risk below highly likely." The judge concluded based on his "review of this entire file at length," that "despite the passage of time" since A.G's offenses and taking into account "the nature of his offenses, the involvement of his antisociality, his drug and alcohol use, as well as his paraphilia," that he remained "a dangerous person."

"The scope of appellate review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). Because judges who hear SVPA cases have special expertise in the area, their decisions are entitled to special deference. Ibid. We will "not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

We disagree with A.G. that the trial judge deprived him of a fair trial by interrupting his expert and counsel. Having reviewed the transcript, we find only a knowledgeable and well-prepared judge engaging the expert and counsel on relevant issues of interest to the judge, sitting as the fact-finder.

We expect a judge in a non-jury trial to actively test an expert's views, see N.J.R.E. 614, and note the judge did so with each of the experts testifying at the hearing. We likewise find no merit to A.G.'s argument that the State's experts relied only on inadmissible net opinions in concluding A.G. was at high risk to reoffend, having recently rejected the nearly identical argument in In re Commitment of A.Y., 458 N.J. Super. 147, 168-73 (App. Div. 2019) (finding the opinions of the State's experts were "based on a comprehensive review of data and information of the type relied upon by others in their scientific community, including the MnSOST-R and Static-99R actuarial instruments").

A.G.'s remaining arguments on appeal reduce to quarrels with the judge's fact-finding which we are simply in no position to reject. See Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). Having concluded Judge Freedman's decision to continue A.G.'s commitment is amply supported by substantial, credible evidence in the record, we affirm substantially for the reasons expressed in his thorough and thoughtful opinion from the bench on June 6, 2018.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-5932-17T5