**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1118-16T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF A.C. SVP 695-15.

Submitted July 9, 2018 — Decided August 1, 2018

Before Judges Carroll and Rose.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
695-15.

Joseph E. Krakora, Public Defender, attorney
for appellant (Thomas G. Hand, Designated
Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Melissa H. Raksa, Assistant
Attorney General, of counsel; Stephen J.
Slocum, Deputy Attorney General, on the
brief).

PER CURIAM

A.C. appeals from a March 7, 2016 order of the Law Division,
continuing his commitment to the Special Treatment Unit (STU), the
secure facility designated for the custody, care and treatment of
sexually violent predators pursuant to the Sexually Violent

Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

We need not recount in substantial detail A.C.'s prior criminal history, which dates back to the early 1960s. In sum, A.C. has an extensive criminal history consisting of sexual and non-sexual offenses. In 1964, A.C. was charged in Indiana with sexual assault and assault and battery. He was convicted of assault and battery, but the record is unclear as to the disposition of the sexual assault charge. Defendant was thereafter twice convicted of attempted rape in Indiana in 1967 and 1970.

A.C.'s predicate conviction arose from a November 1979 arrest for breaking into the home of a seventy-four-year old woman, who he then sexually assaulted. Following a 1980 jury trial, A.C. was convicted of first-degree aggravated sexual assault, first-degree aggravated assault, first-degree robbery, and second-degree burglary, for which he was sentenced to an aggregate forty-five-year prison term.

A.C. escaped from prison in 1981 and was not recaptured until 1985. Following a jury trial in 1990, A.C. was convicted of the escape, and a consecutive fifteen-year prison sentence was imposed. While incarcerated in state prison, A.C. incurred twenty-four disciplinary infractions, including refusal to obey, destroying property, possession of gambling paraphernalia,

disruptive conduct, refusing work assignments, threatening bodily harm, and refusing to submit to a search. The most recent institutional infraction occurred in July 2012.

On November 5, 2014, A.C. was committed to the STU under the SVPA after serving his sentence. The present appeal arises from a periodic review of A.C.'s commitment, which was conducted by Judge James F. Mulvihill on February 18 and March 1, 2016. At the hearing, the State relied on the expert testimony of psychiatrist Roger Harris, M.D., and psychologist Tarmeen Sahni, Psy.D., a member of the STU's Treatment Progress Review Committee (TPRC). A.C. presented the expert testimony of psychiatrist Michael Kunz, M.D., and psychologist Gianni Pirelli, Ph.D.

After interviewing A.C. and reviewing previous psychiatric evaluations, STU treatment records, and related documents, Harris, Kunz and Pirelli prepared reports, which were admitted into evidence. Dr. Sahni participated in the TPRC's review of A.C.'s progress and treatment and authored the TPRC report, which was also admitted into evidence, as were various other treatment notes and records.

A.C. was born in 1944, and was seventy-one years old at the time of the hearing. Notwithstanding A.C.'s age, Dr. Harris concluded he met the criteria of a sexually violent predator and was "highly likely to sexually re-offend if placed in a less

restrictive setting" because he has not mitigated his risk. Dr. Harris further opined that if A.C. were to be released from the STU with conditions, he was highly unlikely to comply with those conditions.

Based on A.C.'s "long history of disregarding the rights of others," his failure "to conform to social norms," his "irritab[ility,]" "aggressive[ness,]" "profound reckless disregard for the safety of others[,]" and "lack of remorse and being indifferent to the way he has hurt others," Dr. Harris diagnosed A.C. with severe antisocial personality disorder. Dr. Harris elaborated that A.C. "maintains the . . . antisocial attitudes and behaviors that I believe are the nexus for his sexual offending [and are] alive and well today . . . . I don't think [A.C.] is that different today at age [seventy-one] than he was throughout the [1970s] when [he was] sexually offending."

Dr. Sahni testified A.C. had not received "any kind of sex offender treatment" that would reduce "his risk to sexually offend . . . ." The TPRC recommended promoting A.C. to Phase 2 of treatment, which "is considered the beginning phase[] of treatment[.]" Dr. Sahni noted A.C. "continues to deny and does not take any responsibility for any of the offenses that he's been charged with."

Like Dr. Harris, Dr. Sahni diagnosed A.C. as suffering from a severe antisocial personality disorder. Additionally, Dr. Sahni made a provisional diagnosis of paraphilic disorder, explaining that A.C. "most likely has the disorder, however, there's insufficient evidence to fully diagnose [him] with such disorder." A.C. scored a four on the Static-99R,[1] placing him in the "moderate high" risk to sexually reoffend. In accord with Dr. Harris, Dr. Sahni opined it was: (1) "highly likely" that A.C. would sexually re-offend in the foreseeable future unless he were confined in a secure facility for treatment; and (2) "highly unlikely" that A.C. would comply if he were to be released from the STU with conditions.

Dr. Kunz initially interviewed A.C. and prepared a report on behalf of the State, but was ultimately subpoenaed to testify on behalf of A.C. at the review hearing. Dr. Kunz similarly determined that A.C. suffered from antisocial personality disorder. In accordance with the State's experts, Dr. Kunz

---

[1] "The Static-99R is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses. See Andrew Harris et al., Static-99 Coding Rules Revised-2003 5 (2003). [We have] explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" In re Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

testified "that [A.C.] has fairly consistently denied having committed any sexual offenses, so in that regard he has not addressed the offenses."

A.C. also scored a four on the Static-99R administered by Dr. Kunz, "which place[d] him in a moderate high risk for reoffense." However, Dr. Kunz noted "the authors of Static-99R advise caution when using [it] . . . in the age group of over [seventy] because the predictive ability of this instrument is not as good as it is in younger age groups." Rather, the advice of the Static-99R authors "is that the offenders over the age of [seventy] should be assumed to have low risk."

In contrast to Dr. Sahni, Dr. Kunz did not diagnose A.C. with paraphilia. Dr. Kunz opined A.C.'s "risk for reoffense is low," but nonetheless "it would be prudent to impose whatever conditions could further decrease [A.C.'s] risk for reoffense." On cross-examination, Dr. Kunz conceded he was unable to state within a reasonable degree of medical probability that, if A.C. were conditionally discharged, he would be highly likely to comply with the conditions of release.

A.C.'s expert psychologist, Dr. Pirelli, also concluded A.C. suffers from antisocial personality disorder. Dr. Pirelli was unable to find A.C. has a paraphilia "at this time," but noted it

6

was "possible by history given [A.C.'s] offense history that he would have likely met [that] criteria in the past."

According to Dr. Pirelli, A.C.'s age decreased his chances of sexually offending, which he described as an "extremely rare event" for individuals, such as A.C., over age seventy. Moreover, Dr. Pirelli's evaluation revealed nothing about A.C. that would lead him to depart from that statistical analysis. Similar to Dr. Kunz, Dr. Pirelli was unable to find, within a reasonable degree of medical certainty, that A.C. was highly likely to comply with all conditions of release were that to occur.

In an oral opinion rendered on March 2, 2016, Judge Mulvihill found Dr. Harris to be a "very credible witness." Likewise, Judge Mulvihill found Dr. Kunz credible, but disagreed with Dr. Kunz's assessment "that the aging process has mitigated [A.C.'s] risk." Rather, the judge found A.C. "has antisocial personality disorder that's alive and well, and that he's no different than the man he was back when he last offended. And he denies all of his offenses. He needs treatment to mitigate his risk." Similarly, while Dr. Pirelli testified credibly, the judge disagreed with Dr. Pirelli's testimony that A.C. was not highly likely to reoffend due to his age.

After recounting the testimony of all four experts, and detailing A.C.'s criminal and disciplinary history and treatment

A-1118-16T5

record at the STU, Judge Mulvihill concluded A.C.'s commitment should continue. The judge found

> by clear and convincing evidence [A.C.] has been convicted of sexual violent offenses, [and] . . . he continues to suffer mental abnormality or personality disorder that does not spontaneously remit, antisocial personality disorder. And also I find that there is the paraphilia, at least by history, and it should be at least a rule out or provisional, and clear and convincing evidence that presently he is highly likely to sexually reoffend if not confined to a secure facility for control, care, and treatment, that the antisocial personality disorder affects him emotionally, cognitively, volitionally, and predisposes him to sexual violence, he has serious difficulty controlling his sexual violent behavior, and I find that he's highly likely to sexually reoffend at the present time.

The judge entered a memorializing order continuing A.C.'s commitment, and this appeal followed.

On appeal, A.C. argues Judge Mulvihill erred in continuing his civil commitment, and finding he was highly likely to commit acts of sexual violence in the future. A.C. further contends the judge's reliance on the testimony of Dr. Harris and Dr. Sahni was not supported by credible evidence, and that in light of A.C.'s age, the State's experts failed to prove the required link between A.C.'s past crimes and his present danger to sexually reoffend. We reject these arguments and affirm.

A-1118-16T5

"The scope of appellate review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). "The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" Ibid. (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

"The SVPA authorizes the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 127 (2002) (quoting N.J.S.A. 30:4-27.28). "The definition of 'sexually violent predator' requires proof of past sexually violent behavior through its precondition of a 'sexually violent offense . . . .'" Ibid. It also requires that the person "suffer[] from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." Ibid. (quoting N.J.S.A. 30:4-27.26).

"[T]he mental condition must affect an individual's ability to control his or her sexually harmful conduct." Ibid. "Inherent in some diagnoses will be sexual compulsivity (i.e., paraphilia). But, the diagnosis of each sexually violent predator susceptible to civil commitment need not include a diagnosis of 'sexual compulsion.'" Id. at 129.

A-1118-16T5

The same standard that supports the initial involuntary commitment of a sex offender under the Act applies to the annual review hearing. See In re Civil Commitment of E.D., 353 N.J. Super. 450, 452-53 (App. Div. 2002). In either case, "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 133-34.

As the fact finder, "[a] trial judge is 'not required to accept all or any part of [an] expert opinion[].'" R.F., 217 N.J. at 174 (second and third alterations in original) (quoting D.C., 146 N.J. at 61). Furthermore, "an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

We are satisfied from our review of the record that Judge Mulvihill's findings are supported by substantial credible evidence. Based on credible expert testimony, the judge determined that A.C.'s disorders, past behavior, and treatment progress demonstrated that he was highly likely to engage in acts of sexual violence unless confined. The judge was not required to accept the testimony of A.C.'s witnesses that his risk of sexually

reoffending was low, especially when both experts were unable to state with any degree of probability that A.C. would comply with conditions imposed by the court if he were released back into the community. Given our limited scope of review, the judge's decision to continue A.C.'s commitment, to which we owe the "utmost deference" and may modify only where there is a clear abuse of discretion, In re J.P., 339 N.J. Super. 443, 459 (App. Div. 2001), was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION