# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1770-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
T.T., SVP-226-02.

_____

Submitted November 19, 2025 – Decided December 8, 2025

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-226-02.

Jennifer N. Sellitti, Public Defender, attorney for appellant T.T. (Stefan Van Jura, Assistant Deputy Public Defender, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

T.T. appeals from a February 14, 2025 order continuing his involuntary civil commitment to the Special Treatment Unit (STU) under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  We affirm.

T.T., who has two violent sexual offense convictions, has been involuntarily committed to the STU since 2002.  In addition, T.T. has a history of alcohol abuse since he was sixteen years old.

In 1976, T.T. pleaded guilty to sexually abusing a six-year-old girl.  T.T. grabbed the victim from the hallway of her apartment building, took her to an abandoned apartment, and raped her before returning the child to her mother and telling the mother he took the girl to the store.  T.T. claimed he had been drinking and did not remember raping the victim.  For that offense, T.T. received an indeterminate five-year prison sentence.

In 1992, T.T. pleaded guilty to aggravated assault, aggravated sexual assault, and terroristic threats against an adult female.  He had been drinking heavily with the victim prior to hitting her in the head with a bat, stabbing her with a pair of scissors, and raping her.  T.T. served time in prison for this offense.

On January 21, 2025, a judge conducted an annual review of T.T.'s continued civil commitment to the STU as required under N.J.S.A. 30:4-27.35

2

and N.J.S.A. 30:4-27.32(a). At the time of the hearing, T.T. was sixty-nine years old.

As part of the annual review, the judge relied on the submitted documents, reports, and evaluations. The judge also considered the unrefuted expert testimony presented at the hearing. The two experts who testified at T.T.'s annual review hearing were Dr. Howard Gilman, an expert in psychiatry, and Dr. Paul Dudek, an expert in psychology. T.T. stipulated to the experts' qualifications and admission of their reports.

Dr. Gilman

Dr. Gilman evaluated T.T.'s mental condition and diagnosed T.T. as suffering from substance abuse disorder, antisocial personality disorder, and "rule out" disorder for pedophilia and sexual sadism.[1] Dr. Gilman acknowledged T.T. did not use alcohol or other illegal substances while at the STU. However, he maintained T.T. continued to suffer from alcohol use disorder because T.T. was experiencing institutional remission.

Dr. Gilman determined T.T.'s personality disorders predisposed him to sexual violence and he would not "spontaneously remit" absent treatment for his

---

[1] Dr. Gilman was unable to confirm a diagnosis of pedophilia or sexual sadism because T.T. declined to meet with him.

disorders. The doctor relied heavily on T.T.'s prior sexual offenses and considered T.T.'s arrests and convictions for nonsexual crimes, including assault, burglary, theft, robbery, and weapons offenses, in reaching his conclusions regarding T.T.'s risk of reoffending if released.

Dr. Gilman assessed T.T.'s score of a two on the Static-99R,[2] which reflected an "average" risk to reoffend. On the Stable 2007,[3] Dr. Gilman stated T.T. scored fourteen out of twenty-four, "placing him in the high range of dynamic needs." According to Dr. Gilman, the combined scores on the Static-99R and Stable 2007 placed T.T. at an above average risk for sexual reoffending with a five-year recidivism risk of 13.6 percent.

---

[2] The Static-99R "is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civ. Commitment of R.F., 217 N.J. 152, 164 n.9 (2014). The Static-99R is based on ten static factors demonstrated to be associated with sexual reoffense, such as age, prolonged intimate connection, non-sexual violence, number of sexual offenses, non-contact sexual offenses, and victim characteristics. The test identifies factors a judge may "consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA." Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)). The scoring under the Static-99R estimates sexual and violent rearrest or reconviction over a period of five years.

[3] The Stable 2007 is an actuarial instrument to assess dynamic risk factors associated with sexual recidivism and level of supervision needed if an individual was released. See Kevin Baldwin, Sex Offender Risk Assessment, Sex Offender Mgmt. Assessment and Plan. Initiative 2-3 (July 2015).

A-1770-24

Dr. Gilman also noted sex offenders are generally less likely to reoffend as they age. However, the doctor opined that T.T.'s non-participation in sex offender treatment at the STU elevated his risk beyond his actual Static-99R and Stable 2007 scoring. Dr. Gilman concluded, within a reasonable degree of medical certainty, T.T. suffers from a mental abnormality affecting his cognitive, vocational, and emotional capacity, remains at a high risk of reoffending if released, and meets the criteria for continued civil commitment under the SVPA.

Dr. Dudek

Dr. Dudek diagnosed T.T. with alcohol and cannabis abuse disorders, paraphilic disorder with nonconsent and pedophilia specifiers,[4] and personality disorder with antisocial traits. He opined T.T.'s personality disorders would not spontaneously remit. According to Dr. Dudek, T.T. required treatment to learn how to control his impulses. Dr. Dudek considered T.T.'s age to be a mitigating factor, but determined T.T. did not "show any evidence of any physiological reduction of risk." Dr. Dudek also assessed T.T. according to the Static-99R and scored him at a three, placing him at an average risk for reconviction or

---

[4] Because T.T. refused to meet with Dr. Dudek, he was unable to render a formal diagnosis of nonconsent or pedophilic disorder.

A-1770-24

rearrest and estimating a fourteen to twenty-three percent chance of recidivism over ten years.

Dr. Dudek concluded T.T. was unable to demonstrate awareness of his sexual offense cycle. The doctor explained the sexual offense cycle as a "way of understanding the process that led to an offense," including consideration of attitudes around sex, triggers, and feelings after offending. Dr. Dudek testified T.T. would have serious difficulty controlling his sexually violent behavior without treatment. Of particular concern to Dr. Dudek were T.T.'s unaddressed issues, including:

> [a] deviant pattern of sexual arousal that appear[ed] to include sadistic elements, poor cognitive problem solving, impulsivity, a lack of meaningful pro-social influences, a history of intimacy deficits, negative emotionality and hostility, poor cooperation with supervision, permissiveness towards sexual offending and antisocial behavior, a history of substance abuse, a history of sexual offending, and the use of weapons in his offending history.

Dr. Dudek concluded T.T.'s lack of participation in any treatment programs required him to remain in Phase One of treatment. Due to T.T.'s failure to make any progress toward reducing his risk of reoffending, and considering the static and dynamic scoring factors, Dr. Dudek concluded T.T. remained at a high risk to reoffend if not confined to the STU.

A-1770-24

Other evidence introduced at the review hearing including an annual report from the STU. The report indicated T.T. was compliant with the STU's rules and had not used alcohol while at the STU. However, the report stated T.T. remained in Phase One of treatment due to his refusal to meaningfully engage in treatment programs.

In June 2024, the STU's Treatment Progress Review Committee (Committee) recommended T.T. remain in Phase One of treatment. The Committee noted T.T.'s "active withdrawal from the treatment process" and his failure to "attend groups, modules, or self-help groups." According to the Committee, T.T. refused to engage in treatment because he believed he did not have a "sex problem."

T.T. also testified at the hearing. T.T. told the judge the opinions of the testifying experts should be discounted because those doctors were not part of his treatment team. Further, T.T. explained he had problem with alcohol but denied he had a sex problem.

After hearing the testimony and reviewing "over five hundred pages of various records from the STU," the judge issued a February 14, 2024 judgment ordering T.T.'s continued commitment with an accompanying written decision. Based on T.T.'s refusal to participate in treatment at the STU, the judge found

7

there was no evidence that T.T. would not re-offend if released. The judge acknowledged T.T.'s lack of "problematic" or "difficult" behavior while at the STU but concluded such behavior alone did not entitle T.T. to release.

The judge rejected T.T.'s argument that his past offenses were due to a long-standing alcohol problem that had since resolved. As the judge noted, T.T.'s status regarding alcohol abuse was the result of "institutional remission" rather than any active treatment for alcohol abuse. Because T.T. has not been treated for his alcohol abuse, the judge found there was no evidence that T.T. would not relapse and consume alcohol once released. In reaching these findings, the judge relied on the experts' testimony which the judge found was "credible and uncontroverted."

Based on clear and convincing evidence and testimony, the judge concluded the State satisfied all three prongs under the SVPA for T.T.'s continued commitment to the STU. First, the judge found T.T. was twice convicted of qualifying sexual offenses. Second, based on the uncontroverted expert testimony, the judge found T.T. "suffer[ed] from a mental abnormality or personality disorder that affects him emotionally, cognitively or volitionally and that does not spontaneously remit." Additionally, the judge determined T.T.

8

"remain[ed] highly likely to commit acts of sexual violence if not confined to the [STU]." Thus, the judge entered a judgment for his continued committal.

On appeal, T.T., through his appellate counsel, raises the following argument:

> THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE HAD PROVED BY CLEAR AND CONVINCING EVIDENCE THAT THE RESIDENT MET THE CRITERIA FOR CONTINUED CIVIL COMMITMENT AS A SEXUALLY VIOLENT PREDATOR.

In addition, T.T. raises the following arguments in his self-represented supplemental brief:[5]

> SUPPLEMENTAL POINT ONE
>
> The Trial Court Judge erred in relying on information contained in the 1992 Adult Presentence Report given by the State's Experts to conclude that [T.T.] was a High Risk in 2025.
>
> SUPPLEMENTAL POINT TWO
>
> Despite the predicate offense findings [T.T.] states that the State failed to establish all three statutory elements by clear and convincing evidence that he was highly likely to commit a future offense.

---

[5] We recite T.T.'s supplemental point headings verbatim.

9

## SUPPLEMENTAL POINT THREE

The State did not present clear and convincing evidence that [T.T.]'s mental abnormality would cause him to have serious difficulty refraining from sexually violent conduct.

## SUPPLEMENTAL POINT FOUR

The Judge erred when relying on the [e]xpert's opinion were possibilities not probabilities, and none of which were factually supported by [T.T.]'s recent behavior. The Judge was mistaken[] in giving [T.T.] a Static-99R score a Three, which is a moderate high risk. When in fact the State's [e]xpert[] rendered his Static-99R score a [T]wo, which is a low medium risk.

## SUPPLEMENTAL POINT FIVE

QUESTION OF LAW: How long can a person be confin[e]d (if) he or she no longer meets the standard in In re Commitment of W.Z., 173 N.J. 109, 237 (2002) or [t]he New Jersey Sexually Violent Predator Act, N.J.S.A. § 30:4-27.24[] et[] al.

## SUPPLEMENTAL POINT SIX

The Court did not question the reliability of the testimony proffered by the State's expert[]s in court.

## SUPPLEMENTAL POINT SEVEN

Under the Cronic[] [s]tandard trial counsel was ineffective [a]ssistance.

10

SUPPLEMENTAL POINT EIGHT

> The [t]reatment [p]roviders at the [STU] have deprived [T.T.] [of] a job in violation of his [c]onstitutional [r]ight of the [Fourteenth] Amendment to earn a living.

Our review of a judgment for commitment under the SVPA is "extremely narrow." In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). "[C]ommitting judges under the SVPA are specialists in the area," whose "expertise in the subject [is entitled to] special deference." In re Civ. Commitment of R.Z.B., 392 N.J. Super. 22, 36 (App. Div. 2007) (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). A trial judge's commitment determination will be subject to modification on appeal only where "the record reveals a clear mistake." R.F., 217 N.J. at 175 (quoting D.C., 146 N.J. at 58). We give special deference to the judge's findings "because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Id. at 174 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"The SVPA authorizes the Attorney General to initiate a court proceeding for the involuntary commitment of an individual believed to be a 'sexually violent predator' as defined by the Act." In re Commitment of W.Z., 173 N.J. 109, 120 (2002) (citing N.J.S.A. 30:4-27.28). A "sexually violent predator" is

11

defined as someone who: (1) has been "convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or . . . charged with a sexually violent offense but found to be incompetent to stand trial;" (2) suffers "from a mental abnormality or personality disorder" predisposing him to commit acts of sexual violence; and (3) as a result of that mental abnormality or personality disorder is "likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26.

T.T.'s annual review hearing focused on the second and third prongs of the SVPA. Under the second prong, the State must prove the individual "suffers from a mental abnormality or personality disorder." R.F., 217 N.J. at 173. The SVPA does not define "personality disorder." See N.J.S.A. 30:4-27.26. However, "the nomenclature . . . is not dispositive." W.Z., 173 N.J. at 127. The focus is on "the mental condition . . . affect[ing] an individual's ability to control his or her sexually harmful conduct." Ibid.

"An inability to control one's sexually violent behavior is the very essence of the SVPA." Id. at 129. "A difficulty arises" in trying to quantify an individual's probability of reoffending by a particular "quantum of proof." Id. at 131. "Predictions of future dangerousness have been for some time a

permitted basis for restriction of a citizen's liberty when that dangerousness is tethered to a finding of mental illness or abnormality." Id. at 132 (citing Hubbart v. Superior Court, 969 P.2d 584, 600 n.26 (Cal. 1999)). The inquiry is focused on an individual's "present serious difficulty with control over dangerous sexual behavior." Id. at 132-33 (emphasis in original).

Here, the State's experts diagnosed T.T. with personality disorders. Both experts concluded T.T.'s disorders contributed to his past decisions to offend and would not spontaneously remit without treatment. Further, both experts noted T.T. refused treatment while at the STU. Additionally, both experts utilized the Static-99R, which is generally accepted as a reliable tool in weighing an individual's future dangerousness in SVPA hearings. See In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 171-72 (App. Div. 2019). Although both experts acknowledged T.T. attained a low to average score on the static-99R and considered his age as a potential mitigating factor, they found T.T.'s refusal to engage in treatment elevated his risk beyond what his age or his static factor scores entailed.

In finding the State proved the second prong under the SVPA, the judge relied on the experts' testimony diagnosing T.T. with mental conditions affecting his ability to control his sexually harmful conduct. The judge found the experts

were credible and their opinions were consistent with the voluminous records which they reviewed.

Under the third prong, the State must prove the individual has serious difficulty controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend. W.Z., 173 N.J. at 132. A determination whether a person is likely to sexually reoffend "lies with the courts, not the expertise of psychiatrics or psychologists." R.F., 217 N.J. at 174 (quoting D.C., 146 N.J. at 59). "Courts must balance society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy." Ibid. (quoting D.C., 146 N.J. at 59).

Here, the judge found T.T. would have serious difficulty controlling his sexually violent behavior given his lack of participation in any treatment while at the STU. Thus, the judge concluded T.T. would be highly likely in the foreseeable future to engage in acts of sexual violence if released. The judge's conclusion is supported by sufficient credible evidence in the record including the unrebutted and credible testimony of both experts.

T.T.'s argument on appeal points to his sobriety and lack of problematic conduct at the STU as mitigating factors. However, the judge considered those factors and determined any mitigating circumstances presented by T.T. were

A-1770-24

outweighed by the experts' unrefuted testimony that T.T. was highly likely to sexually reoffend.

"[A] mere disagreement with the trial court's factfindings cannot be the basis for substituted factfindings by an appellate court" absent a clear mistake. R.F., 217 N.J. at 178. Here, the State's expert witnesses supplied sufficient credible evidence for the judge to conclude T.T. was highly likely to sexually reoffend if released.

Having reviewed the record, we are satisfied the judge properly concluded the State proved by clear and convincing evidence each of the elements for T.T.'s continued civil commitment under the SVPA.

We briefly address T.T.'s arguments in his supplemental pro se brief. T.T. argues the judge impermissibly considered information in his presentence report. However, in the context of New Jersey civil commitment hearings, "pre-sentence investigation reports are . . . admissible since they are the type of evidence reasonably ruled on by psychiatrists in formulating an opinion as to an individual's mental condition." In re Civ. Commitment of J.M.B., 395 N.J. Super. 69, 94 (App. Div. 2007). Therefore, the judge did not err in considering T.T.'s presentence report.

A-1770-24

T.T. relies on out-of-state case law and an unpublished New Jersey case in arguing the judge erred in finding he suffered from a continuing personality disorder and was highly likely to reoffend. Out-of-state cases and unpublished New Jersey cases are not binding on this court. See Pressler & Verniero, Current N.J. Court Rules, cmt. 3.5 on R. 1:36-3 (2025).

T.T. further contends his counsel at the commitment hearing was ineffective. We reject his argument.

In In re Commitment of J.S., 467 N.J. Super. 291, 305-06 (App. Div. 2021), we rejected a claim for ineffective assistance of SVPA counsel during a commitment hearing. J.S. involved an individual who refused to meaningfully engage in treatment at the STU. Id. at 306. We concluded SVPA defense counsel was not ineffective for failing to challenge the State's experts regarding his non-participation in treatment because there was ample evidence of the defendant's refusal to accept treatment. Ibid. Thus, the attorney's decision not to "adduce harmful testimony [regarding the defendant's non-participation in treatment] was a strategic decision" and did not constitute ineffective assistance of counsel. Ibid.

In T.T.'s case, there was ample evidence in the record, aside from the experts' testimony, regarding T.T.'s refusal to engage in treatment at the STU.

16

T.T. had ample opportunity while testifying at his annual review hearing to clarify or refute evidence related to refusal to engage in treatment. He did not do so.

To the extent we have not addressed any of T.T.'s arguments in his pro se supplemental points, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

17